Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

CITY STORES, INC., doing business as Loveman's, Defendant-Appellant.

No. 72–2382.

United States Court of Appeals, Fifth Circuit.

May 29, 1973.

Rehearing and Rehearing En Banc Denied Aug. 16, 1973.

Kenneth Perrine, Sirote, Permutt, Friend & Friedman, Birmingham, Ala., Harry Kelleher, Donald R. Mintz, New Orleans, La., for defendant-appellant.

Beverley R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., Edwin G. Salyers, Atty., Carin Ann Clauss, Donald S. Shire, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and DYER, Circuit Judges.

TUTTLE, Circuit Judge:

The Secretary of Labor filed suit against Loveman's department store [1] for violation of the Equal Pay Act provisions of the Fair Labor Standards Act.[2] The Secretary demonstrated that

---

1. Loveman's, located in Montgomery, Alabama, is a branch of City Stores, Inc. The volume and character of its business brings Loveman's within the jurisdictional reach of 29 U.S.C. § 203(s)(1).

2. Section 6(d)(1), upon which this action is based, reads as follows:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate

Loveman's compensated women selling clothing and related items at a lower rate than it paid salesmen in the men's clothing department, and that the seamstress was paid less than the tailor. Finding the positions of the saleswomen and salesmen to be equal within the meaning of § 6(d)(1) and that the positions of seamstress and tailor were similarly equal, the court also held that Loveman's pay differentials were not based on any factor other than sex. As a remedy against this discrimination, the court enjoined Loveman's from continuing to make pay distinctions between the employees on the basis of sex. It also awarded back pay with interest to the discriminatees in the amount of the differences in pay rates between certain saleswomen and salesmen and between the seamstress and tailor.

Loveman's appeals, contending that (1) the district court failed to make sufficient findings of fact as required by Rule 52, (2) the court applied an erroneous and inconsistent standard of equality in holding that the jobs compared require "equal skill, effort, and responsibility," (3) the court's factual observations were clearly erroneous, and (4) the remedies granted were overly broad, not justified by the Act, and based upon an arbitrary and confiscatory formula. We reject these contentions and affirm the judgment.

The trial court's memorandum opinion set forth extensive findings of fact and conclusions of law which comply fully with the requirements of Rule 52.[3] Though isolated statements in this memorandum might be considered "argumentative and conclusory" rather than objective and primary,[4] these statements when placed in context do not constitute reversible error. For example, the court found that all sales personnel in the departments covered by its order were responsible for marking and fitting clothes as well as selling items to customers. The court also carefully excluded from the scope of its order those sales persons selling only customer-selected items (e. g. ladies' handbags) or dealing in merchandise of a different kind (e. g. household appliances). Thus, it clearly did not conclude that because the "primary duty" of all sales persons is "to sell merchandise," all sales positions are equal for § 6(d)(1) purposes. In addition, the court carefully considered the effect of differences between marking cuffs, crotches, and waistbands of men's suits and adjusting hemlines, shoulders, or waists of women's dresses and concluded these differences to be wholly insubstantial. Finally, though the court did not compare in detail the marking and fitting duties of all personnel in each of the departments, it provided representative examples of how

less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system: (iii) a system which measures earnings by quantity, or quality of production, or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee." 29 U.S.C. § 206(d)(1).

3. Rule 52 states that "[i]f an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." Where such a memorandum is filed, moreover, we have held that there need be no formal separation of findings of fact from conclusions of law. McCrea v. Harris County Houston Ship Channel Nav. Dist., 423 F.2d 605 at 610 (5 Cir., 1970).

4. Two such statements brought to our attention were:
   "As is true of similar employees in any department store, the primary duty of each salesperson is to sell merchandise."
   "Defendant's argument that the fitting of a man's suit differs in kind from the fitting of a woman's pants or dress suit is wholly unpersuasive and contrary to common sense."

saleswomen in the foundations and millinery departments mark and fit items which convince us that the court thoroughly considered the marking and fitting duties as well as the sales responsibilities of sales persons within each department.

Loveman's claim that the trial court's factual observations were clearly erroneous is equally lacking in merit. As an appellate tribunal, we do not, of course, sit to retry cases from the district courts. Smith v. United States, 287 F. 2d 299, 301 (5th Cir., 1961); Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir., 1966). Nor is this a case in which we are convinced that, after reviewing the evidence as a whole, the trial court has committed a mistake. E. g. Hodgson v. American Bank of Commerce, 447 F.2d 416 (5th Cir., 1971). While appellant does point to portions of the testimony which might have supported findings contrary to those actually made by the court, it nowhere impugns the existence of the evidence which the trial court accepted in support of its judgment. As this court said in *Chaney*:

"Where the evidence would support a conclusion either way, a choice by the trial judge between two permissible views of the weight of evidence is not clearly erroneous, and the fact that the judge totally rejected an opposed view impeaches neither his impartiality nor the propriety of his conclusions." 368 F.2d at 776.

The appellant also contends that the trial court applied an incorrect standard in determining that the jobs compared require "equal skill, effort, and responsibility." Though the legislative history of this phrase in the Equal Pay Act was ably explored in Hodgson v. William & Mary Nursing Motel, 20 W.H. Cases 10 (Md.Fla., 1971), we feel constrained to articulate our position in some detail.

██ When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved should be virtually identical, that is, they would be very much alike or closely related to each other."[5] The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."[6] While the standard of equality is clearly higher than mere comparability[7] yet lower than absolute identity,[8] there remains an area of equality under the Act

5. Cong.Rec., Vol. 109, Part 7 (88th Congress, 1st Session).

6. Id.

7. Some examples given in the Guidelines imposed by Congress at 109 Cong.Rec. at page 9209 are:
   "Tenth. A difference in pay between male selectors and packers and female selectors and packers who work on the same assembly line and have the same duties and responsibilities would be invalid.

   . . . .

   "Twelfth. An installer's job on an assembly line that, for example, requires soldering, could not be compared or equated with a welder's job.
   "Thirteenth. A truck driver's job and a tug operator's job are dissimilar.
   "Fourteenth. The work of a machine operator and the work of a skilled machinist cannot be equated.
   "Fifteenth. Plant and office clerical assignments are normally distinguishable."

8. In Hodgson v. American Bank of Commerce, 447 F.2d at 419, fn. 3, we said unequivocally:
   "The Bank continues to assert that there are substantial differences between the Bank's various teller jobs. We recognize that 'Congress in prescribing "equal" work did not require that the jobs be identical, but only that they must be substantially equal.' Shultz v. Wheaton Glass Co., 3d Cir., 1970, 421 F.2d 259, 265. By this standard, the district court's determination that the various tellers performed substantially similar duties, which could be considered equal work, is supported by substantial evidence. See also Wirtz v. American Bank of Commerce, 64 CCH Lab.Cas. ¶32,400 (S.D.Tex., 1970, not officially reported); Shultz v. First Nat'l Bank of Orange, 61 CCH Lab.Cas. ¶32,269 (E.D.Tex., 1970, not officially reported)."

the metes and bounds of which are still indefinite. The trial court observed that, "apparently similar factual patterns brought under the Equal Pay Act *occasionally generate contradictory results.*" [9] Compare Shultz v. Brookhaven General Hospital, 305 F.Supp. 424 (N.D.Texas, 1969) (male orderly's position equal to that of female aide) and Hodgson v. Good Shepherd Hospital, 327 F.Supp. 143 (E.D.Texas, 1971) (male orderly position not equal to female aide). Though such contradictory results are unseemly, no talismanic words will resolve the ambiguities presented by the phrase "equal skill, effort, and responsibility." Like many other legal concepts, that of equality under the Equal Pay Act is susceptible of defini-

tion only by contextual study. Semantic distinctions such as "substantially similar," "substantially equal," "essentially the same," "sufficiently similar," or "equivalent," [10] do not indicate that the court applied an incorrect standard of equality in comparing jobs at Loveman's store. Only if the evidence and findings indicated the court (1) applied the Act's prohibitions where there was an insufficient *congruence* of jobs, or, (2) failed to apply these prohibitions where job differences were insubstantial, would we question the court's use of a particular phrase. Moreover, our contextual view of the standard to be applied under the Equal Pay Act draws sustenance from the regulations issued by the Secretary of Labor.[11] Though not binding upon

9. Contrary to Loveman's contention, the facts of Hodgson v. The Cain-Sloan Co., Civ.Action No. 6443 (M.D.Tenn., 1973) are readily distinguishable from those of the case at bar. Cain-Sloan sales personnel in the women's dress departments did not mark and fit clothes at all, while salesmen in the men's suits department were "required to possess or acquire expertise in the marking of men's suits for alteration." Because of clothes marking and fitting expertise, which *all the affected sales personnel at Loveman's* were required to have, the court held that Cain-Sloan had a "rational basis" for paying the salesmen more than the saleswomen under § 6(d)(1)(iv). No such difference in expertise was present here.

10. All of these were employed by the trial court.

11. The relevant provisions of the Secretary's guidelines are to be found at 29 C.F.R. § 800. 123–800.132. Those parts particularly pertinent to this litigation follow:
"§ 800.123 Determining equality of job content in general.
"In determining whether differences in job content are substantial in order to establish whether or not employees are performing equal work within the meaning of the Act, the amounts of time which employees spend in the performance of different duties are not the sole criteria. It is also necessary to consider the degree of difference in terms of skill, effort, and responsibility. These factors are related in such a manner that a general standard to deter-

mine equality of jobs cannot be set up solely on the basis of a percentage of time. Consequently, a finding that one job requires employees to expend greater effort for a certain percentage of their working time than employees performing another job, would not in itself establish that the two jobs do not constitute equal work. Similarly, the performance of jobs on different machines or equipment would not necessarily result in a determination that the work so performed is unequal within the meaning of the statute if the equal pay provisions otherwise apply. If the difference in skill or effort required for the operation of such equipment is inconsequential, payment of a higher wage rate to employees of one sex because of a difference in machines or equipment would constitute a prohibited wage rate differential. Likewise, the fact that jobs are performed in different departments or locations within the establishment would not necessarily be sufficient to demonstrate that unequal work is involved where the equal pay standard otherwise applies. *This is particularly true in the case of retail establishments, and unless a showing can be made by the employer that the sale of one article requires such a higher degree of skill or effort than the sale of another article as to render the equal pay standard inapplicable, it will be assumed that the salesmen and saleswomen, concerned are performing equal work.* Although the equal pay provisions apply on an establishment basis and the jobs to be compared are those in the particular es-

this court, these regulations, promulgated by the agency primarily responsible for enforcement of Congress' enactments, are entitled to great deference. The presumption is that they are valid unless shown to be erroneously in conflict with the Act itself. See Griggs v. Duke Power Company, 401 U.S. 424, at 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

These regulations obviously contemplate careful weighing of the factors involved in performance of a given job. The general guideline calls for weighing "all relevant evidence," a task precisely performed by the district court in this case. The court compared various aspects of both selling and non-selling duties of sales personnel before deciding that the jobs were equal in skill, effort,

tablishment, *all relevant evidence that may demonstrate whether the skill, effort, and responsibility required in the jobs at the particular establishment are equal should be considered,* whether this relates to the performance of like jobs in other establishments or not. (Emphasis added).

"§ 800.125 Jobs requiring equal skill in performance.

"The jobs to which the equal pay standard is applicable are jobs requiring equal skill in their performance. Where the amount or degree of skill required to perform one job is substantially greater than that required to perform another job, the equal pay standard cannot apply even though the jobs may be equal in all other respects. Skill includes consideration of such factors as experience, training, education, and ability. It must be measured in terms of the performance requirements of the job. If an employee must have essentially the same skill in order to perform either of two jobs, the jobs will qualify under the Act as jobs the performance of which requires equal skill, even though the employee in one of the jobs may not exercise the required skill as frequently or during as much of his working time as the employee in the other job. Possession of a skill not needed to meet requirements of the job cannot be considered in making a determination regarding equality of skill. The efficiency of the employee's performance in the job is not in itself an appropriate factor to consider in evaluating skill.

"§ 800.127 Jobs requiring equal effort in performance.

"The jobs to which the equal pay standard is applicable are jobs that require equal effort to perform. Where substantial differences exist in the amount or degree of effort required to be expended in the performance of jobs, the equal pay standard cannot apply even though the jobs may be equal in all other respects. Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job. Where jobs are otherwise equal under the Act, and there is no substantial difference in the amount or degree of effort which must be expended in performing the jobs under comparison, the jobs may require equal effort in their performance even though the effort may be exerted in different ways on the two jobs. Differences only in the kind of effort required to be expended in such a situation will not justify wage differentials.

"§ 800.129 Jobs requiring equal responsibility in performance.

"The jobs to which the equal pay standard applies are jobs in the performance of which equal responsibility is required. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations. The following illustrations in § 800.130, which are by no means exhaustive, may suggest the nature or degree of differences in responsibility which will constitute unequal work.

"§ 800.130 Comparing responsibility requirements of jobs.

"(b) Other differences in responsibilities of employees in generally similar jobs may require similar conclusions. Sales clerks, for example, who are engaged primarily in selling identical or similar merchandise may be given different responsibilities. Suppose that one employee of such a group (who may be either a man or a woman) is authorized and required to determine whether to accept payment for purchases by personal checks of customers. The person having this authority to accept personal checks may have a considerable additional degree of responsibility which may materially affect the business operations of the employer. In this situation, payment of a higher wage rate to this employee would be permissible."

and responsibility despite immaterial differences between the tasks performed. Likewise, while noting the variety of clothes required to be altered by the seamstress and tailor, the court found an essential equality of skill, effort, and responsibility required for the performance of these tasks and considered carefully the appellant's argument that the tailor's job was more skilled than that of the seamstress. Therefore, despite the court's use of the term "similar" in comparing jobs, we find no instance in which this term was used to mean "comparable" rather than "substantially equal" and there was no error in the court's holding.[12]

Loveman's final challenge is that the remedy was too sweeping because the trial court issued an injunction against it, because interest was awarded as an element of back pay, and because the formula used to compute back pay was "arbitrary and confiscatory." We find no merit to any of these contentions.

█ In determining whether an injunction should issue under the F.L.S.A., we have said that where "past violations have been established . . . it is only in the most compelling circumstances that the exercise of the trial court's discretion in granting an injunction will be annulled." Gulf King Shrimp Company v. Wirtz, 407 F.2d 508, 517 (5th Cir., 1968); see also Hodgson v. First Federal Savings & Loan Ass'n of Broward County, Fla., 455 F.2d 818, 825 (5th Cir., 1972). Though the defendant argues that it had no firm guideline by which to determine that it was in violation of the Act, it was aware of "the statements of the Administrator dated January 10, 1966" and the Labor Department's Interpretative Bulletin issued September 9, 1965, both of which took the position that the job of selling men's clothes was "equal" to that of selling ladies' ready-to-wear.[13] Where, as here, the employer was well aware its practices were in violation of administrative interpretations of the Act and yet continued those practices, "compelling circumstances" do not merit vacating the injunction. Finally, no hardship will be caused by this remedy, for it merely "requires the [employer] to do what the Act requires anyway—to comply with the law." Mitchell v. Pidcock, 299 F.2d 281 at 287 (5th Cir.)

█ Loveman's contends that its "good faith" is a basis for reversing the trial court's award of prejudgment interest on wrongfully withheld back wages. Though this point does not appear to have been discussed by this court, we follow the uniform holdings of the courts of other circuits which have considered this question in holding that

12. A related argument pressed by Loveman's that the jobs compared were paid at differing rates because of factors other than sex, has been fully dealt with above in all but two minor respects.

Loveman's contends that the tighter market for salesmen and male tailors justifies its hiring of men with such skills at a rate higher than that paid to obtain women of similar skills. While factors other than sex (customer embarrassment primarily) justify the employer in seeking male personnel to work in conjunction with selling and fitting male clothing, this is no excuse for hiring saleswomen and seamstresses at lesser rates simply because the market will bear it. Just such disparities were what Congress intended to correct by this legislation. As we said in Hodgson v. Brookhaven, 436 F.2d 719 at 726 (5th Cir., 1970):

█

"Clearly the fact that the employer's bargaining power is greater with respect to women than with respect to men is not the kind of factor Congress had in mind. Thus, it will not do for the hospital to press the point that it paid [male] orderlies more [than female aides] because it could not get them for less."

Nor has the company proven that its amorphous "apprenticeship" program is a "factor other than sex." Schultz v. First Victoria National Bank, 420 F.2d 648, 654, fn. 8 (5th Cir., 1969).

13. The statements of the Administrator are summarized in the CCH Labor Law Reporter, Wages and Hours, ¶25,982.22. They also appear in the Feb., 1966 issue of "Stores—The Magazine for All Retail Executives" published by the National Retail Merchants' Association.

the employee is entitled to full compensation for his injuries even if the employer withheld his wages in good faith. Hodgson v. Wheaton Glass Company, 446 F.2d 527, 534–535 (3rd Cir., 1971); Hodgson v. Falk (4th Cir., 1972); McClanahan v. Mathews, 440 F.2d 320, 324–326 (6th Cir., 1971); Hodgson v. Daisy Mfg. Co., 445 F.2d 823 (8th Cir., 1971). A decision to the contrary would in effect reward the employer for its discriminatory practices and punish the employees for any delay by the Secretary in prosecuting the suit.

■ The defendant's objections to the formula used to compute back pay [14] are numerous. In essence, they question the adequacy of the comparison, the sales persons looked to as the basis for computing the disparity, the rationality of using eight years experience to divide experienced from inexperienced sales personnel, and the dates on which the differentials were computed. While the mechanics of computing back pay are difficult and alternative figures might have been used by the trial court in fashioning a remedy, whatever difficulty of ascertainment exists was due to the discriminatory wage structure maintained by the defendant. In such cases, it suffices for the trial court to determine the amount of back wages "as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). "Difficulty of ascertainment is no longer confused with right of recovery." Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721 at 725–726 (5th Cir., 1961) and Hodgson v. Ricky Fashions, Inc., 434 F.2d 1261 at 1262–1263 (5th Cir., 1970). Since no

single wage scale could be ascertained for women or men at Loveman's, and because the formula used by the trial court was reasonably calculated to compensate the discriminatees for their losses, we decline to require a more precise calculation in this case.

The judgment of the district court is affirmed.

---

14. The court discerned from the most recent hiring rates of experienced men and women (William Harvey, Edward Taylor, Bessie Poindexter, and Nina Rigsby) that the wage disparity between male and female sales persons was $.57/hour plus a 2% commission on net sales. For inexperienced sales persons (less than 8 years), it found the disparity between April, 1968 and the date the complaint was filed in October, 1969 to be

$.15/hour. It held that back pay should be awarded to October 12, 1967 except that experienced saleswomen should be paid a 1% commission up to and including March 1, 1968, the date on which the commission for salesmen was raised from 1% to 2%. The seamstress was ordered back pay to October 12, 1967 in the amount of the difference between her pay and the tailor's pay.