**Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**The CAIN–SLOAN COMPANY, Defendant-Appellee.**

**No. 73–1870.**

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1974.

Decided Aug. 28, 1974.

William J. Kilberg, Solicitor of Labor, U. S. Dept. of Labor, Washington, D. C., Donald S. Shire, U. S. Dept. of Labor, Washington, D. C., Carin Ann Clauss, Washington, D. C., for appellant.

Joseph Martin, Jr., Nashville, Tenn., for appellee.

Before PHILLIPS, Chief Judge, EDWARDS and PECK, Circuit Judges.

PER CURIAM.

Appellant Secretary of Labor appeals from the denial of its petition to enjoin the Cain-Sloan Company, Inc., from violating Section 17 of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (1970), in particular those provisions which prohibit discrimination on the basis of sex by paying wage rates to employees of one sex at a lesser rate than are paid to employees of the opposite sex.

The basic contention here on the part of the government is that men assigned to the "400 Selling Center" (men's clothing) received a guaranteed wage, or in the alternative, a commission of 7%, whereas female employees of the store were paid either on a straight hourly rate which yielded less money, or at a commission rate of 5% or 5½%. The specific store involved in this case is Cain-Sloan's Green Hills Store in a suburb of Nashville, Tennessee. The principal issue pertains to Cain-Sloan's argument, which was accepted by the District Judge, that in the "400 Selling Center" the male employees who received the 7% commission are "required to possess or acquire expertise in the marking of men's suits for alterations."

On this basis the District Judge found that the defendant's practice of paying additional compensation for the men's high-priced suit department had a rational basis and did not constitute a violation of the Act.

Government counsel sought to belittle the expertise involved in the marking for alteration and insisted that the District Judge had failed to apply the standards applicable to an employer claim that "the job requires additional skill," as these standards are set out in Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970).

During the course of the trial, Cain-Sloan conceded that the saleswomen in the designer and better dress department and fur department were doing equivalent work and they now are being paid on the same commission rate as men. The government, however, asserts that all saleswomen in some eleven divisions in the store are doing work equal to that of the two groups of employees just discussed and should be paid on the same basis, and, of course, Cain-Sloan argues to the contrary.

We have reviewed this lengthy record against the standards of Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970); Corning Glass Works v. Brennan, 417 U.S. 188, 94 S.

Ct. 2223, 41 L.Ed.2d 1 (1974), and Brennan v. City Stores, Inc., 479 F.2d 235 (5th Cir. 1973). In this last case Judge Tuttle noted, "While the standard of equality is clearly higher than mere comparability yet lower than absolute identity, there remains an area of equality under the Act the metes and bounds of which are still indefinite." Brennan v. City Stores, Inc., *supra,* at 238–239. Our instant case helps to illustrate that conclusion. Contrary to the findings of fact of the District Court in the *City Stores* case before Judge Tuttle, the District Judge who tried this case found as follows:

> After consideration of all the testimony, it seems clear that the pinning for and alteration of garments, both women's and men's, requires a level of skill above that required of one engaged in sales alone. Certainly an employer may require employees of the men's department to possess or learn such skills and, in accordance with the interpretative bulletin of the Department of Labor, it is not unreasonable that if additional skills are required, the employer shall pay additional compensation therefor. Keeping in mind the legislative history, the provisions of the Act, and the interpretive bulletin of the Labor Department, the court finds that Cain-Sloan had a justification for the payment of additional compensation for those employees who exercised or were required to learn additional skills over and above those required to accomplish the duties of other job classifications. Therefore, in accordance with the above findings, the court holds that defendant's practice of paying additional compensation to employees of the men's "high-priced" suit department has a rational basis and does not constitute a violation of the Act.

Although this record is not without factual dispute, there is substantial evidence that men in the "400 Selling Center" were required to have or acquire alteration skills. Since November 1971 there has not been a full time tailor at

the store which is the situs of this dispute. Under these circumstances we cannot hold that the District Judge's findings of fact recited above are "clearly erroneous." Fed.R.Civ.P. 52(a).

This, then, would lead logically to our affirmance of the District Judge's opinion and judgment, but for the fact that there were claims by other employees that their work also required them to mark for alterations. (See, for example, transcript pp. 155–57 attached). As to these instances the District Judge did not make findings of fact which provide us with a basis for differentiating between such claimants and those found by the District Court to be appropriately rewarded by higher wages within the purview of the Act.

We find no reason in this record to doubt the District Judge's conclusion that there is a substantial distinction as found by the District Court between the skills found on the normal selling floor and those provided by a salesman who also marks garments for fitting and alteration.[1] There may also be distinctions between the skills required for marking for lengthening or shortening cuffs, for example, and marking substantial alterations, but if so, the findings of fact thus far made are inadequate for our drawing such distinctions.

For the reasons outlined above, we affirm the judgment of the District Court to the extent that it finds the "400 Selling Center" employees are required to have or acquire an expertise in marking for alteration which represents a substantial difference from normal selling work. As mentioned above, defendant conceded that saleswomen engaged in selling designer and better dresses and furs should be paid wages at a percentage equal to that of the salesmen in the men's clothing department, and the court ordered the payment of back wages. This concession is not disputed on appeal, and that portion of the judgment is also affirmed. We vacate all other aspects of the judgment and remand the case for further findings of fact pertaining solely to saleswomen in other departments who claim that alteration expertise and work are equally a part of their selling job.

## APPENDIX

For example, Mrs. McMahon testified:

By MISS BARNETT:

Q. Did any small men ever come to you as well?

A. Yes, ma'am, they did.

[155] Q. Did you cross-sell in any other departments in the store?

A. A few times I sold out of the men's, very few times.

Q. And what commission were you paid when you sold from the men's department?

A. Regular 5½.

THE COURT: What did you sell in the men's department?

THE WITNESS: Well, I sold, I remember I had one customer that had two tall boys and I sold a suit over there once, and then I sold some men's slacks once or twice.

By MISS BARNETT:

Q. Could you tell us what your duties were as a sales person at Cain-Sloan?

A. Well, I waited on the customers and I kept the stock filled up and I wrote credits and refunds and okayed checks, took care of alterations.

THE COURT: Wait a minute. What kind of alterations?

A. Marking pants, shortening sleeves on coats when I would sell them, jackets.

---

1. We note, of course, the contrary findings of fact on this issue which confronted the Fifth Circuit in Brennan v. City Stores, Inc., 479 F.2d 235 (5th Cir. 1973). Additionally, we observe that alterations by salesmen may be quite rare in the clothing industry since, aside from this case, we have not found (or been cited to) any case where salesmen were found to be performing such work to a significant extent. Nonetheless, the record does support the District Judge's findings as to this particular store.

By MISS BARNETT:

Q. When you took care of this marking, did you actually have to prepare a ticket to take up to the alterations department?

A. Yes, ma'am.

Q. What would you do after you filled out that ticket?

A. Take them to the alterations department upstairs.

Q. And how long generally did you have to wait until you could go back and get it?

A. It would depend on the season. If we weren't too busy, sometimes you would work it through in a couple of days, but when we were busy, sometimes it would be as much as a week, back to school, you know, and sales like that.

Q. As far as the alterations, did most of the items you sold require some kind of marking?

A. Most slacks on children had to be shortened, yes, ma'am.

Q. What about the suits?

A. Well, usually the sleeves, we would have to alter those.

THE COURT: Did you ever mark any pegs in the men's and boys' suits to be taken out by the alterations department? Do you know what a peg is in a men's suit?

THE WITNESS: No.

By MISS BARNETT:

Q. Would you call the alterations department for assistance at all?

A. Yes, ma'am. Whenever there would be something unusual, like shortening a collar or shortening the coat or putting a gusset in a paid of pants, Mr. Greenberg was called in to take care of that.

THE COURT: Putting a what now, a gusset?

THE WITNESS: In a pair of pants.

THE COURT: What is a gusset?

THE WITNESS: Under the crotch, where the crotch would be too short, set in a piece.

THE COURT: Okay. What do you call it when you take out the fullness in the leg, on the outside of the leg?

THE WITNESS: Taper.

THE COURT: Taper, that is what they call marking a peg. Did you mark tapers?

THE WITNESS: Yes, sir. Taking the flare out and tapering it.

THE COURT: All right.

Transcript p. 155–57.