Jerry **LYONS and Michael J. McKenzie, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**GEORGIA–PACIFIC CORPORATION SALARIED EMPLOYEES RETIREMENT PLAN and GEORGIA–PACIFIC CORPORATION, Defendants.**

Civil Action No. 97–CV–980.

United States District Court, N.D. Georgia, Atlanta Division.

March 12, 2002.

Rex M. Lamb, III, Bruce David Cohen, Smith Gambrell & Russell, Atlanta, GA, Robert P. Geller, Bradford T. Yaker, Eva T. Cantarella, Bradley J. Schram, Hertz Schram & Saretsky, Bloomfield Hills, MI, Allen C. Engerman, Office of Allen C. Engerman, Northbrook, IL, for plaintiffs.

Peter Quirk Bassett, Forrest W. Hunter, Gregory C. Braden, Todd Richard David, Alston & Bird, Atlanta, GA, for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Plaintiffs' motion for summary judgment [54] and Defendants' motion for summary judgment [57].

## I. STATEMENT OF THE CASE

### A. Procedural History

Plaintiff, Jerry Lyons, filed the instant action on behalf of himself and a class of persons similarly situated against Defendants Georgia–Pacific Corporation and Georgia–Pacific Corporation Salaried Employees Retirement Plan ("the Plan"), pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff alleges that he was denied his proper benefits under the Plan. The dispute in this case arises over the statutory interpretation of ERISA in conjunction with various provisions of the Internal Revenue Code and Treasury Regulations promulgated thereunder. Plaintiff, a participant in a defined benefit, cash balance pension plan, opted to convert his annuity to a lump sum payment. Plaintiff alleges that Defendants improperly calculated the amount of his lump sum payout under the Plan. Plaintiff argues that, in order to comply with ERISA, Defendants are required to use the valuation methodology provided for in Treasury Regulations 1.411(a)–11 and 1.417(e)–1. Plaintiff alleges that he would have received more money had Defendants used this methodology.

A brief recitation of the court's prior order will facilitate the instant discussion. Plaintiff and Defendants filed cross motions for summary judgment, and on March 22, 1999, this court entered an order granting summary judgment to Defendants. Fundamental to the court's March 22, 1999 order are two ERISA sections.

Section 203(e)(1) of ERISA (the "consent provision") requires that, when the present value of a benefit is greater than $3,500, a plan participant must consent before any distributions are made. In order to determine what that present value is, § 203(e)(2) (the "formula provision") provides a formula. In the order, the court first found that the Treasury Regulations cited by Plaintiff, 1.411(a)–11 and 1.417(e)–1, were incorporated into § 203(e) of ERISA. The court then found that the application of the Treasury Regulations would necessarily require every plan, in order to comply with ERISA, to make a present value calculation of a participant's normal retirement benefit by using the formula found in the formula provision of ERISA and distribute no less than that amount.

This requirement, the court found, significantly expanded the scope of the formula provision. On its face, the court concluded that the formula in the formula provision applied only to the consent provision. Put another way, the formula for determining the present value of a benefit was only to be used to determine whether that value was greater than $3,500, thereby triggering the consent requirement. The Treasury Regulations would require the use of the § 203(e)(2) formula in every present value calculation. Engaging in a *Chevron* analysis, the court found that the Treasury Regulations were an unreasonable construction of § 203(e).

Plaintiff appealed, and on August 11, 2000, the United States Court of Appeals for the Eleventh Circuit issued an opinion reversing and remanding this court's March 22, 1999 order. The Court of Appeals found that while the language of the statute was ambiguous, the wording indicated that the formula found in the formula provision's present value determination formula applied to all lump sum distributions. The court also found class representative problems with the named Plaintiff, Jerry Lyons. The court noted that the ambiguous language of the consent provision and the formula provision was removed by the Retirement Protection Act of 1994. Because Lyons received his distribution in 1993, the court found that the legal issues relating to that distribution had to be decided in view of the statute as it existed at that time. In other words, while Lyons' distribution would have to be decided using the ambiguous language of § 203(e), the claims of any class members who received distributions after 1994 would be governed by the amended language of the Retirement Protection Act of 1994. The court found that Lyons is not an adequate representative for those class members who received their lump sum distributions after the effective date of the 1994 amendment, because their claims are governed by ERISA § 203(e) as amended by that legislation.

On July 14, 2001, this court approved a consent order adding an additional class representative, Michael McKenzie. Plaintiff McKenzie received his lump sum distribution after 1994. On August 24, 2001, Plaintiffs Lyons and McKenzie filed a motion for summary judgment, and Defendants filed a timely response. Defendants filed a motion for summary judgment on December 7, 2001. The following issues are now in dispute: (1) the correct methodology for valuing the Lyons' subclass lump sum payment; (2) whether Treasury Regulations 1.411(a)–11 and 1.417 apply to § 203(e) for the McKenzie subclass; and (3) if so, what is the appropriate damages methodology.

## B. Facts

The following facts are undisputed. Plaintiffs are former employees of Defendant Georgia–Pacific Corporation and

were participants in the Salaried Employees Retirement Plan. The Plan was a cash balance defined benefit plan, which is a pension plan that defines retirement benefits for employees by reference to a hypothetical account to which hypothetical contributions are periodically made pursuant to various formulas set forth in the Plan. The Plan provided participants with individual account statements of their hypothetical account balances and allowed participants to elect to receive a lump sum distribution of benefits under the Plan in the amount of the balance of their hypothetical accounts.

Plaintiff Lyons' employment with Georgia–Pacific terminated on January 5, 1991. At that time, he was 49 years old and had completed more than five years of service and was therefore eligible for a "vested" benefit under the Plan. In 1993, Plaintiff elected to receive a total lump sum distribution of his Plan benefits. In accordance with the provisions of the Plan, he received the amount stated as the balance of his individual account: $36,109.35. Although the lump sum distribution made to Plaintiff complied with the terms of the Plan, Plaintiff Lyons contends that it was in violation of ERISA. Following 28 years of service, Plaintiff McKenzie separated from Georgia–Pacific in November 1996 at the age of 56. McKenzie also elected to receive the lump sum distribution. McKenzie received $73,537.35 from Defendants.

## II. DISCUSSION

### A. The Lyons Class Methodology

Pursuant to the Eleventh Circuit's order and the terms of the Plan, the following three-step process must be used in order to compute the lump sum amount due to Plaintiff. Defendants must (1) project interest credits to the participant's hypothetical account to age 65 using the interest crediting rate provided for in the Plan; (2) convert the age–65 account balance into an increasing life annuity; and (3) then discount to present value in order to calculate the lump sum distribution to which the participant is entitled. While the steps appear relatively clear, various disputes have arisen regarding the manner in which each of these steps should be implemented.

When interpreting a contract, "a court must first examine the natural and plain meaning of a policy's language." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n.*, 117 F.3d 1328, 1337 (11th Cir.1997) (quoting *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir.1996)). Where the language of a policy is either inconsistent, ambiguous, or otherwise not open to reasonable construction, the court must interpret the policy in accordance with the applicable rules of construction. *Golden Door*, 117 F.3d at 1337. The Eleventh Circuit has held that, when interpreting ERISA plans, ambiguities in the language of the plan should be construed against the drafter. *Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1551 (11th Cir. 1994).

### 1. The Opening Account Balance

■ The first dispute centers on the opening account balance. Section 3.1(a) of the Plan provides that "[a] Personal Account shall be established and maintained for each Participant to which credits shall be made in accordance with the provisions of Article 3." The Plan further states that these Personal Accounts are intended to be "bookkeeping accounts." Defendants argue that the court, in computing the lump sum amount, should not project forward the balance found in the Personal Account. According to Defendants, this is because the balance found in the Personal Account is nothing more than the present value of the future annuities under a de-

fined benefit plan. Defendants argue that, in order to arrive at the opening balance found in the Personal Account, they have *already* used the "project forward" methodology provided for in ERISA § 203(e) and § 417(e) of the Code. Put simply, Defendants argue that Lyons' opening balance already reflects a conversion to an age 65 annuity, and that using this amount in the methodology would, in effect, be to twice subject Lyons' pay credits to ERISA § 203(e) and § 417(e) of the Code, thereby creating a "double whipsaw" effect. Plaintiff responds that both the Plan itself and the Eleventh Circuit's opinion refute Defendants' arguments. Plaintiff points out that, under the Plan, a participant's Personal Account includes the opening balance. Furthermore, Plaintiff notes that the Eleventh Circuit held that the Plan requires Defendants to credit each personal account with interest credits to age 65 in order to determine the amount of the annuity that must be discounted to the present value.

The court begins by finding that the Eleventh Circuit's opinion does appear to assume that the amount to be projected forward in the instant lump sum calculation is the account balance found in the Personal Account. The court stated "[t]o determine the normal retirement amount Lyons would have received at age 65, the Plan specifies that his *hypothetical account balance* must be projected forward using the interest credit rates set forth in the Plan." *Lyons v. Georgia–Pacific Corp.,* 221 F.3d 1235, 1252 (11th Cir.2000) (emphasis added). While the Plan never refers to a "hypothetical account balance," the court finds that the Eleventh Circuit was referring to the Personal Account, the balance of which the Plan describes as a "bookkeeping account."

The court agrees with Defendant, however, to the extent that it appears that Plaintiff's Personal Account would be twice subjected to § 3.5 of the Plan. Section 3.5(a) of the Plan provides that, on a monthly basis, a participant's Personal Account is to increase at the PBGC[1] twelve-month rate plus 0.75%. Put simply, every month that Plaintiff worked after January 1, 1990, his Personal Account increased at the rate specified in § 3.5(a). Under Plaintiff's argument, however, this Personal Account should now be projected forward using the very same § 3.5(a) rate. In effect, Plaintiff's argument requires the court to twice subject the Personal Account to the rate specified in § 3.5(a). But for the Eleventh Circuit's opinion, the court would find that this is an improper interpretation of the Plan. But the Eleventh Circuit's opinion clearly anticipates the application of the project-forward discount-back methodology to the Personal Account. Given the Eleventh Circuit's conclusion, the court finds that the account balance found in the Personal Account is properly used as the basis for the instant lump sum calculation.

**2. The Interest Crediting Rate**

■ The second dispute is over the proper interest crediting rate to apply to the account balance. The Eleventh Circuit held that the first step in the computation would be to project forward interest credits to age 65 using the interest crediting rate in the Plan. The court specifically noted that "[i]t is the Plan itself, rather than the Treasury regulations, that requires the hypothetical account balance to be projected forward using the interest credit rates set forth in the Plan." As both Plaintiff and Defendants have pointed out, however, the Plan itself is not entirely

**1.** The PBGC is the Pension Benefit Guaranty Corporation, a corporate entity within the Department of Labor, enacted by Congress when it enacted ERISA.

clear as to what that interest crediting rate should be. Plaintiff argues that the only reference to an interest crediting rate appears in § 3.5(a) of the Plan. As previously discussed, § 3.5(a) requires that a participant's Personal Account increase on a monthly basis by the PBGC immediate rate plus 0.75%. This is referred to as the Periodic Adjustment Percentage ("PAP"). Plaintiff argues that the Plan requires the court to use the PAP as the interest crediting rate in its forward projection.

Defendants disagree and argue that § 3.5(b) of the Plan effectively prohibits the use of the PAP as the interest crediting rate. Section 3.5(b) states that "[u]ntil the Benefit Commencement Date, each Personal Account shall be adjusted as of the end of each calendar month by . . . the Periodic Adjustment Percentage . . . no adjustment shall be made under this Section 3.5 for any calendar month which includes the Benefit Commencement Date for any Personal Account." In the case of a lump sum payment, § 1.5 defines the "Benefit Commencement Date" as "the first date on which all events have occurred which entitled the Participant to payment under this Plan." In sum, Defendants argue that because all events have occurred which entitle Plaintiff to his lump sum payment, the Plan prohibits the use of the PAP as a means of making any future adjustment, and therefore cannot be used as the interest crediting rate. Defendants argue that the court should look instead to Appendix A, Section D, of the Plan, which states that "actuarial equivalence" should be calculated using the interest rate equal to the immediate annuity rate of the PBGC. Defendants argue that this section is relevant because, through the forward

projection, Plaintiff is attempting to determine the actuarial equivalence of his account at age 65.

The court begins by agreeing with the parties that the Plan is unclear as to what interest crediting rate should apply to the forward projection. But based on the Eleventh Circuit's opinion, as well as the ambiguity of the Plan, the court concludes that the PAP is the appropriate interest crediting rate. Throughout its opinion, the Eleventh Circuit noted that the instant litigation was brought about because the interest credit rate established by the Plan is 0.75% higher than the prescribed maximum discount rate, or the rate prescribed by the PBGC. In other words, the Eleventh Circuit clearly assumed that the interest crediting rate in this case would be the PBGC immediate rate plus 0.75%, or the value defined as the PAP.

The Eleventh Circuit did not address Defendant's argument that § 3.5(b) of the Plan actually prohibits the use of the PAP as the interest crediting rate. The court agrees with Defendants that § 3.5(b) does limit the application of the PAP to such a forward projection where the Benefit Commencement Date has already occurred. Several other Plan provisions, however, indicate that the Benefit Commencement Date may not have yet occurred. Section 6.1(b) of the Plan provides "[p]rior to January 1, 1994, in the case of a Participant whose Severance Date occurs before he is eligible to retire, unless a lump sum payment is made in accordance with Section 6.5, his Benefit Commencement Date shall be his Normal Retirement Date . . . ."[2] Section 6.5 applies to lump sum payments that are less than $3,500. As Plaintiff's payment was more than this amount, § 6.5

---

**2.** Further sections limit § 6.1(b)'s provision that the Benefit Commencement Date is the date of normal retirement. Sections 6.1(b)(1)-(2) and 6.1(c)-(e) of the Plan alter the Benefit Commencement Date. None of these provisions, however, appears to apply to the instant case.

does not apply to it. Accordingly, the court finds that § 6.1(b) applies to the instant lump sum payment. Under this provision, Plaintiff's Benefit Commencement Date is his Normal Retirement Date, or age 65. Accordingly, the court finds Defendant's argument that the Plan prohibits the use of the PAP as the interest crediting rate to be without merit.

Furthermore, the court is not convinced that Appendix A is the appropriate tool for this calculation. Plaintiff has persuasively argued that the "actuarial equivalence" section was only intended to be used to convert one type of annuity to another, and not for purposes of a lump sum calculation. The court draws no conclusion other than that the Plan is ambiguous as to the proper interest crediting rate. As the court previously stated, the Eleventh Circuit requires that the court construe any ambiguities in the language of the Plan against the drafter. In light of this requirement, and given the Eleventh Circuit's apparent conclusion that the interest crediting rate under the Plan was the PAP, the court agrees with Plaintiff that the interest crediting rate found in the PAP, or the PBGC immediate rate plus 0.75%, is the correct rate for the forward projection.

### 3. Converting the Account Balance at Age 65 Into an Increasing Life Annuity

■ After projecting the account balance forward to age 65, the second step in the computation requires Defendants to convert the balance into an increasing life annuity payable at 65 and payable for the participant's lifetime. Both parties agree that this should be done by referencing Appendix A, which requires that the account be divided by 210 to determine the monthly annuity, which begins at age 65. A dispute arises, however, after this. Section 6.2(c) of the Plan provides that an increasing annuity is required to increase at the actual PAP rate in effect for each year the annuity is paid. Defendants argue that because the actual PAP rate for future years is unknown, this section is unenforceable. Defendants again argue either that the case should be remanded to the Plan Administrator to determine the rate, or that Appendix A's "actuarial equivalence" section should govern. Under Defendants' argument, the annuity increases at the PBGC immediate rate in effect when Plaintiff receives his distribution, or 0.75%, should control.

Plaintiff argues that, contrary to Defendants' assertions, the future rate is determinable by reference to either of two different statutory provisions. First, Plaintiff notes that § 204(b) requires defined benefit plans to satisfy one of three benefit accrual rules: (1) the 3% rule; (2) the 133⅓% rule; or (3) the fractional rule. Plaintiff argues that only the 133⅓% rule is applicable to the instant benefit plan because the other two limit the number of years that may be taken into account in computing an employee's benefit. Under the 133⅓% rule, "any social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after the current year." 29 U.S.C. § 1054(b)(1)(B)(iv). Plaintiff argues that, consequently, the PAP rate for the annual annuity increases after age 65 must equal the PAP rate when Plaintiff receives his lump sum.

The court agrees with Plaintiff that § 204(b) of ERISA requires a defined benefit plan to satisfy one of three accrual rates, and that the 133⅓% rate appears to be the only applicable rate. Under § 204(b)(1)(B)(iv), the court finds that the actual PAP rate for future years must remain constant with the current rate. In

light of this statute, and in light of the fact that the Plan is ultimately ambiguous as to the question of how the actual PAP rates for future years should be determined, and therefor should be construed against the drafter, the court agrees with Plaintiff that the actual PAP rate by which the increasing annuity is required to increase would be the PBGC immediate rate plus 0.75% for distributions made prior to January 1, 1996.

### 4. Discounting the Age 65 Annuity to Present Value

The final step in the computation is also the most disputed. Once the account balance has been changed into an increasing life annuity, it must then be discounted back to present value. Two disputes arise in this stage of the computation. First, both parties disagree as to what discount rate should be utilized. Second, the parties disagree as to whether pre-retirement mortality assumptions should be used in discounting to present value.

### a. The Discount Rate

Section 203(e)(2)(A)(ii) of ERISA provides that the present value of a benefit shall be calculated "by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 ...." Section 203(e)(2)(B) defines the applicable interest rate as "the interest rate which would be used (as of the date of distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination." Defendants assert that, pursuant to these sections, the discount rate should be 120% of the PBGC rate (the "120% factor").

Plaintiff disagrees and argues that because the Plan contains no explicit adoption of the § 203(e) language, the 120% factor would be improper. Plaintiff begins by pointing to the anti-cutback rules found in § 204(g) of ERISA. This section prohibits employers from amending a benefit plan in a manner that would effectively decrease the value of an accrued benefit. Plaintiff argues that this section prevents Defendants from using the 120% factor mandated by § 203(e)(2)(A)(ii). As a general proposition, the higher the discount rate, the lower the present value, and the lower the discount rate, the higher the present value. Accordingly, Plaintiff is arguing that using the 120% factor would effectively lower the present value of his accrued benefits, thereby violating the anti-cutback rule found in 204(g). In support of his argument, Plaintiff points to the language of the Tax Reform Act of 1986, which amended ERISA and added the language in § 203(e) cited by Defendants. The section of the Tax Reform Act cited by Plaintiff provides:

If a plan—

(I) adopts a plan amendment before the close of the first plan year beginning on or before January 1, 1989, which provides for the calculation of the present value of the accrued benefits in the manner provided by the amendments made by this section, and

(ii) the plan reduces the accrued benefits for any plan year to which such plan amendment applies in accordance with such plan amendment,

such reduction shall not be treated as a violation of section 411(d)(6) of the Internal Revenue Code of 1986 or section 204(g) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1054(g)).

Pub.L. 99–514, 100 Stat.2085 (Oct. 22, 1986). Plaintiff notes that the Plan failed to adopt by January 1, 1989 an amendment providing for the calculation of the present value of the accrued benefits in the man-

ner provided for in § 203(e). Accordingly, Plaintiff argues that use of the 120% rate violates the anti-cutback provision of § 204(g) and therefore cannot be used. Defendants respond that no statutory provision requires a plan's language to mimic the language of ERISA.

The court finds the dispute as to the proper discount rate to be problematic. Unlike the prior contested issues, the court finds that the Plan contains absolutely no reference, either explicit or implied, to the proper discount rate. The Plan clearly did not anticipate the application of a project-forward discount-back lump sum calculation and is, quite simply, silent as to the proper discount rate. Furthermore, unlike the prior disputes, the Eleventh Circuit's opinion provides no guidance as to the proper rate to be used in the calculation. In light of this, and given the complete absence of guidance from the Plan, the court could only arrive at a discount rate by arbitrarily picking one that did not violate ERISA's anti-cutback provisions, essentially creating a new Plan provision out of whole cloth. The court is not convinced that this is the proper course of action.[3] Instead, the court finds

that the plan administrator must properly address the issue and determine a discount rate that does not violate the anti-cutback provisions of ERISA.[4]

**b. Pre–Retirement Mortality Discount**

■ The second, and most complex, dispute arises over the question of the proper mortality assumptions to be used in the discounting process. Referred to as the mortality decrement, this is "a discount factor based on the probability that the participant will forfeit the annuity benefit on account of death." Pl.'s Mot. For Summ. J. ¶ 11. The debate arises over whether the Plan requires a pre-retirement (i.e., death before the age of 65) mortality discount to be used in the lump sum calculation. Defendants argue that both the Plan and ERISA require the use of a pre-retirement mortality discount. Defendants point to the fact that, under the Plan, an individual could elect to receive an annuity and die the next day, thereby never realizing the value of his account. Based on this possibility, Defendants argue that most defined benefit

3. The court notes that this situation is somewhat distinguishable from one in which a court remands a case to a plan administrator. As a general rule, "remand to the plan fiduciary is the appropriate remedy when the plan administrator has not had the opportunity to consider evidence on an issue." *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1330 (11th Cir.2001). Remanding to a plan administrator may be appropriate where there "are multiple issues and little evidentiary record to review." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 n. 6. Here, the problem is that there is no factual record for an administrator to review. The court has no basis from which it can decide a proper discount rate.

4. Plaintiff argues that ERISA prohibits the plan administrator from making any interpretations of the Plan. Plaintiff points to § 503 and Department of Labor Regulation

2560.503–1, both of which require a plan to provide a participant with the "specific" reasons why their claim was denied, in writing. Plaintiff argues that because the letter did not contain any issues related to plan interpretation, Defendants are estopped from allowing a plan administrator intervene for that reason. The court disagrees. The issues that remain for the plan administrator to interpret, namely the proper discount rate and the question of whether a pre-retirement mortality discount should be used, have both arisen as a result of the Eleventh Circuit's decision. The court does not find any evidence that Defendant should have or could have anticipated that these issues would arise prior to the litigation. Accordingly, the court finds no error in Defendants' failure to identify these issues of plan interpretation in their denial of benefits letter.

plans apply pre-retirement mortality assumptions in their determination of present value of future annuity payments. Defendants further point out that ERISA § 205(g)(3) requires that pre-retirement mortality assumptions be applied to determine the present value of a participant's benefits, including the death benefit. In support of their argument, Defendants cite the testimony of Lawrence Sher, a pension actuary of 28 years. Sher testified that "[i]n determining the lump sum present value of a benefit under a traditional defined benefit pension plan, the vast majority of plan sponsors I am familiar with apply pre-retirement mortality assumptions in calculating the lump sum value of annuities starting in the future." Sher. Aff. ¶ 14. Defendants furthermore cite the PBGC itself, which applies pre-retirement mortality assumptions in calculating lump sum distributions. *See* PBGC Reg. § 4044.75, App. A.

Plaintiff asserts that such a discount is not supported by the Plan. Plaintiff notes first that, pursuant to § 5.1 and 5.2 of the Plan, if a participant who has elected the annuity dies before the age of 65, the participant's surviving spouse or beneficiary is entitled to the same lump sum payment payable to the participant under the Plan. If the participant lives to 65, he begins to receive his annuity payments. If the plan participant dies at any point once annuity payments have begun (or, put another way, at any point after age 65), the annuity payments cease. Plaintiff argues that, therefore, a participant's death before the age of 65 does not mean that he loses his benefits—it simply means that his lump sum payment goes to his beneficiary. Accordingly, because pre-retirement mortality does not alter the fact that beneficiaries still retain the lump sum payments, no mortality discount should be used for the discount period before age 65. Plaintiff further argues that to do so would violate the anti-cutback provision of § 204(g). Plaintiff asserts that the utilization of a pre-retirement mortality discount would reduce the interest credits to be projected to age 65, resulting in a forfeiture of accrued benefits in violation of ERISA. Plaintiff argues that the age–65 annuity must first be discounted to age 65 utilizing a mortality decrement for the period after age 65, and then the age–65 lump sum must be further discounted to the participant's actual age at the time of distribution, but without any mortality decrement. In support of his argument, Plaintiff cites various members of the Society of Actuaries, as well as various papers published by the Society, each indicating that no pre-retirement mortality is to be calculated where the full account balance is provided to beneficiaries of participants who die prior to age 65.

The court also finds this issue to be problematic. Like the dispute over the proper discount rate, no legal authority governs the question of whether a pre-retirement mortality discount is proper. And like the question surrounding the discount rate, resolution of the instant dispute would require the court essentially to create new Plan provisions. Again, this is not a situation in which the court is being asked to interpret an ambiguous plan provision. Instead, the Plan is silent as to whether pre-retirement mortality discounts are appropriate. Such silence is not necessarily evidence of poor drafting. As the court has previously noted, the Plan is simply not designed to accommodate the instant lump sum calculation. As a result, the court cannot resolve the instant questions by referring to the Plan. As a matter of law, the court finds that the Plan does not lend itself to a judgment on the issue of whether it is proper to apply a pre-retirement mortality discount. Such a

question initially may be only properly answered by the plan administrator.

## B. Pre-judgment Interest

▇ The final dispute between the parties is over whether the court should award pre-judgment interest. Defendants argue that because ERISA is silent as to whether pre-judgment interest is appropriate, it is within the discretion of the trial court to award it. Defendants further argue that pre-judgment interest is inappropriate because (1) both classes can be adequately compensated without an award of pre-judgment interest; (2) there was no unjust enrichment in the case; and (3) Defendants acted in good faith.

▇ The award of an amount of pre-judgment interest in an ERISA case is a matter "committed to the sound discretion of the trial court." *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89–90 (11th Cir.1989). This circuit has held that good faith is not a defense to pre-judgment interest. *See Hembree v. Georgia Power Co.*, 637 F.2d 423, 430 (5th Cir.1981) (citing *Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir.1973)).[5] Rather, the decision as to whether to award pre-judgment interest should be grounded in the question of whether such an award would succeed in making the wronged party whole. *See Hembree*, 637 F.2d at 430 (finding pre-judgment interest appropriate where " 'the only way the wronged party can be made whole is to award him interest from the time he should have received the money.' ") (quoting *Louisiana & Arkansas Railway v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir.1966)). Here, the court finds the awarding of pre-judgment interest appropriate.

The court must next determine the rate. Because there currently exists no statutory provision that provides the rate for pre-judgment interest, the Eleventh Circuit has endorsed the practice of looking to analogous state law provisions. *See Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1484 (11th Cir.1995). Accordingly, the court looks to Georgia's statutorily mandated post-judgment interest rate for guidance. *See Smith v. American Inter. Life Assur. Co. of New York*, 50 F.3d 956, 958 (11th Cir.1995) (approving the pre-judgment application of the post-judgment interest rate found in O.C.G.A. § 7–4–12). Section 7–4–12 of the O.C.G.A. requires a rate of 12% per year. The court finds this to be an appropriate amount. Accordingly, the court grants Plaintiff's motion for summary judgment on the issue of pre-judgment interest and awards it at a rate of 12% per year.

## C. The McKenzie Class

▇ Pursuant to the Eleventh Circuit's opinion, this court approved a consent order adding an additional class representative, Michael McKenzie, who received his lump sum distribution after 1994. The year is significant because Congress passed the Retirement Protection Act in 1994, which substantially altered the language of § 203(e). In their motion for summary judgment, Defendants argue that the Eleventh Circuit based its holding that the present value calculation methodology applied to voluntary and involuntary distributions on the ambiguous language in the statute. Defendants argue that the Retirement Protection Act removed the exact language that the Eleventh Circuit found to be ambiguous. Accordingly, De-

---

5. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

fendants argue that the court's earlier analysis regarding the inapplicability of the Treasury Regulations should apply to the McKenzie class. Plaintiff counters that the Eleventh Circuit merely indicated that the removal of the language in question would remove any "extreme ambiguity," and not all ambiguity. Furthermore, Plaintiff argues that some language deemed ambiguous by the Eleventh Circuit still remains in the Retirement Protection Act.

An examination of both statutes, as well as the Eleventh Circuit's opinion, is necessary. The 1986 version of § 203(e), applicable to the Lyons class, provides:

(e) Consent for distribution; present value; covered distributions

(1) If the present value of any nonforfeitable benefit with respect to a participant in a plan exceeds $3,500, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant.

(2)(A) For purposes of paragraph (1), the present value shall be calculated—
(I) by using an interest rate no greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and (ii) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (I)). In no event shall the present value determined under subclause (II) [ sic] be less than $25,000.

(B) For purposes of subparagraph (A), the term "applicable interest rate" means the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

In its prior order, this court found that clause (2)(A)'s methodology (the formula provision) applied only to clause (1) (the consent provision), or, put another way, the present value calculation methodology was only intended to be used to ascertain the present value of a benefit for purposes of determining whether the payment was voluntary or involuntary. Because subsequent Treasury Regulations required the use of the § 203(e)(2)(A) formula in every present value calculation, the court concluded that, under *Chevron*, the Treasury Regulations were an unreasonable construction of § 203(e). The Eleventh Circuit reversed, and found that the language in clause (2) contradicted a finding that it applied only to clause (1). The Eleventh Circuit specifically found that the repeated references to $25,000 in clause (2) rendered it unlikely that Congress was intending to limit present value calculation methodology simply to involuntary lump sum payments (or, in other words, benefits whose present value was less than $3,500).

The Retirement Protection Act amended § 203(e), and provides:

(1) If the present value of any nonforfeitable benefit with respect to a participant in a plan exceeds $3,500, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant

(2) For purposes of paragraph (1), the present value shall be calculated in accordance with section 205(g)(3).

As is clear, Congress removed any reference to $25,000 from the section. The Eleventh Circuit noted this in its opinion, and stated "[i]n the Retirement Protection Act of 1994, Congress removed the language relating to the calculation of present value amounts in excess of $25,000, thereby lessening (or perhaps removing) the ambiguity or self-contradictory nature of the § 203(e) provisions." The court agrees. The removal of the references to $25,000 makes it clear that the calculation of present value, now found at § 205(g)(3),

applies only for purposes of determining whether a benefit exceeds $3,500 and therefore may not be distributed without consent. The court finds that the ambiguity giving rise to the Eleventh Circuit's opinion has been removed.

Accordingly, the court finds that its previous analysis again becomes relevant. In its March 22, 1999 order, this court found that Treasury Regulation § 1.411(a)–11 clearly restricted the ability of defined benefit plans to distribute a portion of a participant's accrued benefit without complying with the specified valuation rules set forth in Treasury Regulation § 1.417(e)–1 (d). The court could find no congressional authorization for such an expansion of ERISA § 203(e). The court concluded that, under *Chevron*, Treasury Regulations § 1.411(a)–11 and 1.417(e)–1 impermissibly expanded the scope of ERISA § 203(e). The court finds that this conclusion is all the more justified in light of the new, unambiguous language of § 203(e) set forth in the Retirement Protection Act. Accordingly, the court adopts its *Chevron* analysis from its March 22, 1999 order, and finds that Treasury Reg. § 1.411(a)–11 is an unreasonable construction of the congressional mandate newly clarified and set forth in ERISA § 203(e). Accordingly, Defendants' motion for summary judgment as to liability for the McKenzie class must be granted and Plaintiff McKenzie's motion denied.

## III. CONCLUSION

To the extent that the Plan allows the court to interpret its ambiguities, it has done so. The court has found that the opening balance must be projected forward using the PAP rate as the interest crediting rate. This balance shall be converted to a life annuity by dividing by 210, and the annuity will then increase at the PBGC immediate rate plus 0.75%. Prejudgment interest shall be awarded at a rate of 12% per year. Accordingly, the court GRANTS IN PART and DENIES IN PART Plaintiff Lyons' motion for summary judgment [54] and GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment as to Plaintiff Lyons [57]

The court has furthermore found that the two remaining issues, the proper discount rate to use and the question of whether a pre-retirement mortality discount should be used, cannot be decided given the Plan's silence. On these issues, both Plaintiff's motion for summary judgment and Defendants' motion for summary judgment are DENIED [54, 57]. Finally, the court GRANTS Defendants' motion for summary judgment as to Plaintiff McKenzie.

The parties have forty-five [45] days from the date of entry of this order in which to submit a proposed order applying the above methodology to the relevant benefit plans.