Michael J. THOMPSON,
et al., Plaintiffs,

v.

RETIREMENT PLAN FOR EMPLOY-
EES OF S.C. JOHNSON & SONS,
INC., and Retirement Plan for Em-
ployees of JohnsonDiversey, Inc., De-
fendants.

Anthony J. Decubellis, Plaintiff,

v.

Retirement Plan for Employees
of JohnsonDiversey, Inc.,
Defendant.

Case Nos. 07–CV–1047, 08–CV–0245.

United States District Court,
E.D. Wisconsin.

March 26, 2010.

Opinion Denying Reconsideration
June 30, 2010.

Eli Gottesdiener, David N. Sharpe, Gottesdiener Law Firm PLLC, Brooklyn, NY, for Plaintiffs.

Carmen N. Couden, Sara J. Bolden, Susan R. Maisa, Foley & Lardner LLP, Milwaukee, WI, Evan Miller, Sara R. Pikofsky, Jones Day, Washington, DC, Lawrence DiNardo, Jones Day, Chicago, IL, for Defendants.

## ORDER

STADTMUELLER, District Judge.

Plaintiffs are former and current participants in the Retirement Plan for Employees of S.C. Johnson & Sons, Inc., ("the SCJ Plan") and the Retirement Plan for Employees of JohnsonDiversey, Inc. ("the JDI Plan," collectively, "the Plans") and bring this suit alleging that the Plans violated the Employee Retirement Income Security Act of 1974 (ERISA). The plaintiffs assert two claims: 1) a "backloading" claim, alleging that the Plans impermissibly backloaded pension benefits; and 2) a "lump sum" claim, alleging that the Plans incorrectly calculated lump sum distributions paid to pre-retirement age plan participants by failing to apply a "whipsaw" [1] calculation. The court granted the plaintiffs' motion for class certification and certified two general classes related to the "backloading" claim and four subclasses related to the "lump sum" claim. The parties have filed cross-motions for summary judgment on both claims which are fully briefed and ready for decision.

The Plans argue that the "backloading" claim is moot because they admit that they are "frontloaded" interest crediting plans. The plaintiffs disagree and argue that the Plans are both "backloaded" and "frontloaded." [2] The court will grant summary

---

1. A "whipsaw" calculation refers to the method of calculating the actuarial equivalence of the annuity a plan participant in a cash balance plan (like the SCJ and JDI Plans) would have received if he had waited until normal retirement age to receive his benefits, rather than taking a lump sum disbursement prior to retirement age. The "whipsaw" calculation first projects a participant's hypothetical account balance forward to retirement age at the plan's future interest crediting rate, and then discounts the balance back to its present value. *See Esden v. Bank of Boston,* 229 F.3d 154, 159 (2d Cir.2000); *Berger v. Xerox Corp. Retirement Income Guarantee Plan,* 338 F.3d 755, 760 (7th Cir.2003).

2. The terms "frontloaded" and "backloaded" refer to the manner in which a cash balance plan compounds interest credit. "Backloading" occurs when a plan participant receives disproportionately higher benefit accruals for later years of service. *See Langman v. Laub,*

judgment to the Plans on this claim, for the reasons discussed below.

The parties agree that the Plans are liable on the "lump sum" claim, but disagree about whether the plaintiffs' claims are time-barred and about how lump sum distributions should be recalculated. The Plans admit that they did not properly apply a "whipsaw" calculation when determining lump sum payments and acknowledge that, as a result, the plaintiffs who chose to receive a pre-retirement lump sum distribution may not have received the full amounts to which they were otherwise entitled. However, the Plans argue that this fact is irrelevant because the plaintiffs' claims are untimely under the applicable statute of limitations. The court finds that the "lump sum" claims of certain plaintiffs are time-barred and grants summary judgment to the Plans on the claims of the SCJ Lump Sum Subclass B and the JDI Lump Sum Subclass B plaintiffs. However, the court will deny summary judgment to both parties regarding their proposed interest crediting rates and will order the Plans to recalculate the plaintiffs' lump sum distributions in accordance with the law.

## BACKGROUND

### A. The SCJ and JDI Plans

The defendants in this action are pension plans that provide benefits for the employees of S.C. Johnson & Sons, Inc. ("SC Johnson") and JohnsonDiversey, Inc. ("JohnsonDiversey"). The SCJ and JDI Plans are "cash balance" plans, a type of defined benefit pension plan. The SCJ Plan has existed for many years as a defined benefit plan, but was amended to include a cash balance formula effective June 1, 1998. The JDI Plan, however, did not previously exist and employees of the spin-off company now named JohnsonDiversey were previously included in the SCJ Plan. Effective December 31, 1998, the employees of JohnsonDiversey's predecessor, S.C. Johnson Commercial Markets, Inc., were subdivided from the SCJ Plan and became participants in a new Retirement Plan for Employees of S.C. Johnson Commercial Markets, Inc., which later became known as the JDI Plan.

Under the cash balance design of the SCJ and JDI Plans, a hypothetical or "notional" cash balance account is established for each employee participant. Participants accrue benefits in their notional accounts based on amounts credited annually to those accounts. The Plans credit participants' accounts in two ways: 1) through Annual Service Credits, which are based on a percentage of annual compensation; and 2) through Annual Earnings Credits, which are based on a predetermined formula. The Plans define the Annual Earnings Credit as 4% interest or 75% of the rate of return generated by the Plan's Trust for that year, whichever is greater.

The SCJ and JDI Plan terms allow a participant who ends his employment before normal retirement age to take his pension benefits in a single lump sum, referred to as a "lump sum distribution." Alternatively, the participant may leave his benefits in his notional account and continue to earn Annual Earnings Credits until age 65. A number of the plaintiffs in this case are plan participants who elected to receive a lump sum distribution prior to normal retirement age of 65. The plan terms require that participants receive a

---

328 F.3d 68, 71 (2d Cir.2003). "Frontloading" occurs when a plan participant accrues interest credits at the same time as he accrues pay credits and the credits are not conditioned on future employment. *See Hirt v. Equitable Retirement Plan for Employees, Managers, and Agents*, 441 F.Supp.2d 516, 551 n. 12 (S.D.N.Y.2006).

pre-retirement lump sum distribution that is the actuarial equivalent of the notional account balance at normal retirement age. However, the Plans made distributions to the plaintiffs equal to the amount in their notional accounts at the time of the distribution, prior to normal retirement age. The Plans concluded that lump sum recipients were only entitled to the balance in their notional account by conducting a zero sum calculation. The Plans projected a participant's future interest credits forward to age 65 using the 30–year Treasury rate. The Plans then used the same 30–year Treasury rate to discount the value of the notional account back to the present. Therefore, the interest projection rate and the discount rate cancelled each other out and left participants with accrued benefits equal only to the balance in their notional accounts on the date of distribution. It is this practice that the Plans now acknowledge was an inadequate "whipsaw" calculation that failed to properly account for the value of a participant's account at normal retirement age.

## B. The Plaintiff Classes

The plaintiffs are current and former participants in the SCJ and JDI Plans. On February 25, 2010, the court certified two plaintiff classes that pertain to the "backloading claim," and four subclasses that pertain to the "lump sum" claim. The court first certified two classes made up of plan participants in each plan who maintained a notional account[3] and became vested in their Plan benefit, labeled the "SCJ Class" and the "JDI Class."

The court also certified four subclasses made up of subsets of the SCJ Class and the JDI Class. These subclasses include plan participants who received a lump sum distribution of their benefits prior to normal retirement age of 65. There are two subclasses associated with each Plan, and the subclasses are distinguished based on whether a participant received his or her lump sum distribution prior to a particular date. SCJ Lump Sum Subclass A includes participants in the SCJ Plan who received a lump sum distribution after November 27, 2001, and before August 17, 2006.[4] SCJ Lump Sum Subclass B is made up of participants who received a lump sum distribution prior to November 27, 2001, and after January 1, 1998, the date the plan adopted a cash balance formula. The JDI lump sum subclasses similarly distinguish between lump sum recipients based on the date they received their lump sum payments. The JDI Lump Sum Subclass A contains participants who received a lump sum distribution between March 13, 2002—the date when a plaintiff with standing first brought suit against the JDI Plan—and August 17, 2006. The JDI Lump Sum Subclass B is made up of participants who received their lump sum distribution before March 13, 2002, and after January 1, 1998.

## C. Whipsaw Calculation

The plaintiffs allege that the lump sum distributions the subclass members received were not the actuarial equivalent of their normal accrued pension benefits, as

---

**3.** The JDI Class only includes those persons for whom the JDI Plan maintained a notional account prior to January 1, 2004, while the SCJ Class includes all persons for whom the SCJ Plan has ever maintained a notional account.

**4.** The lump sum distributions made after August 17, 2006, are not subject to the require-

ment that the cash balance pension plan apply a "whipsaw" calculation in order to comply with ERISA, based on the passage of the Pension Protection Act of 2006, Pub.L. No. 109–280, 120 Stat. 780 (2006). *West v. AK Steel Corporation Retirement Accumulation Pension Plan*, 484 F.3d 395, 402 (6th Cir.2007).

required for compliance with ERISA, because the Plans failed to apply a proper "whipsaw" calculation in determining the plaintiffs' lump sum payments. "Whipsaw" refers to the two-step calculation to ensure actuarial equivalence between a plan participant's pre-retirement age lump sum distribution and the present value of his normal retirement age benefits. First, a participant's account balance is projected forward to normal retirement age of 65 using the rate at which future interest credits would have accrued if the participant had left his benefits in the notional account until that age. Second, the projected amount is discounted back to present value of those benefits on the date the lump sum is distributed. If a plan applies future interest credits to a participant's notional account at a rate less than the plan's normal interest crediting rate, the participant's lump sum distribution will be less than the actuarial equivalent of the present value of his age 65 account and the participant will suffer a forfeiture of accrued benefits. *See Berger v. Xerox Corp. Retirement Income Guarantee Plan,* 338 F.3d 755 (7th Cir.2003) (finding that the defendant plan violated ERISA by failing to apply future interest credits to participants' notional account balances at the plan's future interest credits rate and, instead, applying interest credits at a rate exactly equal to the discount rate). This is exactly what the plaintiffs assert happened in the instant case. The plaintiffs allege that the Plans violated ERISA by projecting participants' future interest at the 30–year Treasury rate, rather than projecting future interest at the plan's rate of 4% or 75% of the rate of return on the Trust's assets.

## ANALYSIS

The parties both seek entry of summary judgment. Summary judgment is appro-priate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering cross-motions for summary judgment, the court is obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made. *Bassiouni v. F.B.I.,* 436 F.3d 712, 721 (7th Cir.2006).

## I. Impermissible Backloading Pursuant to ERISA § 204(b)(1)

Each party asks the court to grant summary judgment in its favor on the plaintiffs' claim that the Plans are unlawfully backloaded in violation of ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1). Section 204(b)(1) establishes minimum standards for the rate at which pension plan participants earn benefits. These minimum benefit accrual rates prevent employers from backloading benefits (making benefits accrue slowly until an employee nears retirement age) so that an employee's vested pension rights have little value until he or she has completed a lengthy period of service. *Jones v. UOP,* 16 F.3d 141, 143 (7th Cir.1994). A defined benefit plan can satisfy the minimum benefit accrual requirements by satisfying the "133 1/3 Percent Rule"[5] embodied in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).

---

**5.** There are three tests that a defined benefit

plan may satisfy to comply with the minimum

John F. Buckley IV, *ERISA Law Answer Book* § 11:4 (6th ed. 2008). The "133 1/3 Percent Rule" specifies that a plan satisfies the minimum benefit accrual requirements if the accrued benefit payable at normal retirement age is equal to the normal retirement benefit, and the annual rate at which any individual who is, or could be, a participant can accrue the benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which that individual can accrue benefits for any plan year. *Id.* (citing ERISA § 204(b)(1)(B); I.R.C. § 411(b)(1)(B)). The purpose behind these requirements is to prevent a plan from being unfairly weighted against shorter-term employees. *Id.*

The plaintiffs allege in their Second Amended Complaint that the Plans are unlawfully backloaded in violation of § 204(b)(1) "[t]o the extent that either Defendant responds to this Complaint by denying that the Annual Earnings Credit is a frontloaded interest credit (in whole or in part)." However, the SCJ and JDI Plans do not deny that the Annual Earnings Credit is frontloaded. On the contrary, the Plans admit in their respective Answers that "The Plans were, and are . . . 'frontloaded' interest crediting plans within the meaning of IRS Notice 96–8." The Plans previously moved to dismiss the § 204(b)(1) claim as moot based on their admission that they are frontloaded interest crediting plans and based on the seemingly conditional nature of the plaintiffs' claim. However, the plaintiffs opposed the motion to dismiss the "backloading" claim, despite the Plans' admissions. The court declined to resolve the matter at that time,

due to the cursory treatment of the issue by both parties. Consequently, the parties now move for summary judgment on the "backloading" claim.

On the surface, it appears that the "backloading" claim is moot because the plaintiffs asserted their claim "only to the extent that" the Plans denied their interest credits were frontloaded. However, the plaintiffs now argue that the Annual Earnings Credit is both frontloaded and impermissibly backloaded. The Annual Earnings Credit is defined as the greater of 4% interest or 75% of the rate of return generated by the Plan's Trust for that year. The plaintiffs argue that the Annual Earnings Credit is simultaneously frontloaded and backloaded; it is frontloaded only up to the 4% minimum guaranteed interest, and backloaded as to any future interest credits above that 4% interest floor.

The plaintiffs base their argument on this court's previous decision dismissing their separate claims for violations of ERISA § 204(g) and § 204(h). In determining that the plaintiffs failed to state a claim for violations of § 204(g) and § 204(h), the court found that investment policy changes to the Plans' allocation of trust assets—altering the percentage of assets invested in equities versus fixed income—did not establish a reduction in a protected, accrued benefit in violation of § 204(g). The plaintiffs suggest the court found that the right to future interest credits on the 75% rate of return on plan assets is not part of a participant's protected, accrued benefit until it is actually credited to the participant's notional account, and that only the 4% minimum portion of the interest crediting formula is an ac-

---

benefit accrual requirements, one of which is the "133 1/3 Percent Rule." John F. Buckley IV, *ERISA Law Answer Book* § 11:4 (6th ed. 2008). However, the plaintiffs note that the "133 1/3 Percent Rule" is the only test which

a cash balance plan, such as the SCJ or JDI Plan, can satisfy, and limit their arguments to the Plans' inability to satisfy this specific test. (*See* Pls.' Mot Summ. J., at 7).

crued benefit. The plaintiffs make this assertion and then proceed to argue that the Annual Earnings Credit is backloaded as to any trust return rate greater than the 4% floor because it fails the "133 1/3 Percent Rule."

The plaintiffs are impeded by allegations within their own pleadings, however. The plaintiffs allege in their Second Amended Complaint that the Plans are frontloaded interest crediting plans, which the Plans admit in their Answers. The plaintiffs also allege that they accrued the "right to receive future Annual Earnings Credits on their notional account balances through normal retirement age at the same time as they accrued the corresponding pay credits to which the Annual Earnings Credits relate," which the Plans also admit. This statement and admission satisfies the definition of a "frontloaded" plan found in IRS Notice 96–8. Notice 96–8 is an authoritative interpretation of the relevant ERISA statutes and regulations regarding frontloaded cash balance benefit plans and provides guidance on the application of § 204(b)(1) to these plans. *See Berger*, 338 F.3d at 762. The notice provides that an interest credit plan is frontloaded when "the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same time that the benefits attributable to the hypothetical allocation accrue." I.R.S. Notice 96–8, 1996–1 C.B. 359, Section III A. Thus, the plaintiffs' complaint itself seems to establish the frontloaded nature of the Annual Earnings Credit and cripples the plaintiffs' claim that the credit is partially frontloaded and partially backloaded. *See Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir.1997) (stating that "[i]t is a well-settled rule that a party is bound by what it states in its pleadings.").

Further, the Annual Earnings Credit formula does not generate impermissible "backloading" because it complies with the "133 1/3 Percent Rule." The ERISA minimum benefit accrual rules seek to prevent the application of different accrual rates pursuant to the length of a plan participant's service with the employer. Application of different accrual rates allows an employer to "backload" a participant's benefits so that they are worth "very little" if the participant leaves the employer many years before reaching retirement age. *See Berger*, 338 F.3d at 762. This tends to "lock an employee into his current employment." *Id.* Requiring a pension plan to satisfy minimum benefit accrual rules, such as the "133 1/3 Percent Rule," seeks to prevent a plan from disadvantaging workers in their early years of employment, when they are most likely to leave the company. *See Register v. PNC Financial Services Group, Inc.*, 477 F.3d 56, 71 (3rd Cir.2007). The "133 1/3 Percent Rule" keeps plans from backloading benefits by prohibiting a plan from applying a benefit accrual rate that exceeds the accrual rate in any previous year by more than 33%. 29 U.S.C. § 1054(b)(1)(B). The test prevents a plan from applying higher accrual rates as an employee increases his years of service with the company.

The formula employed by the SCJ and JDI Plans does not fail the "133 1/3 Percent Rule" or disadvantage newer employees because the Plans do not tie accrual rates to the length of service of their participants. Instead, the Plans apply the same accrual rate to all employees, regardless of their years of service. Each plan participant accrues pay credits at a rate of 5% of compensation and interest credits at a rate of 4% interest or 75% of the rate of return on trust assets for that year, whichever is greater. The accrual rate remains constant and applies equally to all employ-

ees. Thus, the Plans' accrual rate can never exceed itself by 33% and it does not violate the "133 1/3 Percent Rule."

The fact that the Plans' constant accrual rate does not violate the "133 1/3 Percent Rule" becomes clear when it is compared with plans whose accrual rates *do* violate the rule. Treasury Regulation 1.411(b)–1 provides two examples of plan designs which violate the test. 26 C.F.R. § 1.411(b)–1(b)(2)(iii). The first example of a "failing" plan is one in which a participant accrues benefits at a rate of 1% of average compensation for his first 5 years, 1 1/3% for the next 5 years, and 1 7/9% for each subsequent year. *Id.* at Ex. 2. The plan fails the "133 1/3 Percent Rule" because a participant in his eleventh year of employment accrues benefits at a rate more than 33% higher than his rate of accrual in his first five years (a rate of 1 7/9% versus 1%). The next example of a "failing" plan is one in which a participant accrues benefits at a rate of 2% of his average compensation for the first 5 years of participation, 1% for each of the next 5 years, and 1 1/2% for each year thereafter. *Id.* at Ex. 3. This plan fails the "133 1/3 Percent Rule" because a participant in his eleventh year accrues benefits at a rate more than 33% higher than he earned in years six through ten of employment (a rate of 1 1/2% versus 1%). These example plans clearly apply differing accrual rates based on length of service. In contrast, the accrual rate formulas employed by the SCJ and JDI Plans for service credits and interest credits do not change over time. Every employee accrues benefits at a rate of 5% of compensation and the greater of 4% interest or 75% of the rate of return on Trust assets, regardless of how many years of employment they complete.

The Plans do not violate the "133 1/3 Percent Rule" because they employ a constant benefit accrual rate. Further, the allegations made by the plaintiffs in their pleading establish that the Annual Earnings Credit employed by the SCJ and JDI Plans is a frontloaded credit. Therefore, the court will grant summary judgment to the Plans on the plaintiffs' "backloading" claim.

## II. Statute of Limitations Applicable to the "Lump Sum" Claims

The court next turns to the "lump sum" claim asserted by the plaintiffs, which alleges violations of ERISA § 203(e) and § 205(g) based on lump sum distributions less than the present value of the plaintiffs' benefits at age 65, and violations of § 203(a) based on the resulting forfeiture of benefits. However, the court must begin by resolving the questions of which statute of limitations applies to the "lump sum" claims and when the limitations period began to run. The answers to these questions are preliminary issues because the SCJ and JDI Plans argue that the "lump sum" claims asserted by all four of the certified subclasses are time-barred. If their contention is correct, the court need not address the claims any further.

The parties present the court with a choice between applying the four-year federal default statute of limitations contained within 28 U.S.C. § 1658(a), or applying the six-year statute of limitations governing breach of contract claims under Wisconsin law. The parties also propose several alternatives regarding the event which triggered accrual of the "lump sum" claims and the running of the statute of limitations. These events include the date when plan participants initially received Summary Plan Descriptions, the date when each plaintiff received his or her "lump sum" distribution of benefits, or a later, unspecified date when the plaintiffs learned that the Plans improperly calculated their lump sum payments.

## A. Applicable Statute of Limitations Period

 The court first considers whether a four-year or six-year limitations period applies to the plaintiffs' claims. The question of an applicable limitations period arises because ERISA does not contain a statute of limitations for non-fiduciary claims, such as those brought by the plaintiffs. *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 n. 2 (3d Cir.2007). In the absence of an ERISA limitations period, the SCJ and JDI Plans assert that the federal default statute of limitations contained in 28 U.S.C. § 1658(a) applies. Section 1658(a) provides a general, four-year limitations period for any statute enacted after December 1, 1990, that does not contain its own statute of limitations. The statute reads as follows:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). Though the statute refers to claims arising under laws enacted after 1990, it also applies to claims arising under amendments to pre-existing statutes. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380–381, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). ERISA was enacted in 1974, but the Plans argue that the § 1658(a) statute of limitations applies to the plaintiffs "lump sum" claims because sections 203(e) and 205(g) of ERISA give rise to the claim and were amended after 1990. A claim "arises under" an amendment to a pre–1990 law for purposes of § 1658(a) "if the plaintiff's claim against the defendant is *made possible* by a post–1990 enactment." (emphasis added) *Jones*, 541 U.S. at 382, 124 S.Ct. 1836. In other words, the four-year limitations period applies to claims arising under an amended statutory section if the post–1990 amendment "creates a new right to maintain an action." *See id.*

The Plans note that § 203(e) and § 205(g) were amended by the Retirement Protection Act of 1994(RPA) to change the actuarial assumptions used to calculate the present value of lump-sum distributions. Prior to the 1994 modification, the "applicable interest rate" used to discount a participant's accrued benefit back to present value was defined as the rate used by the Pension Benefit Guaranty Corporation. *Esden v. Bank of Boston*, 229 F.3d 154, 165 (2d Cir.2000). After the RPA amendments, the "applicable interest rate" was defined as the "annual rate of interest on 30–year Treasury securities for the month before the date of distribution or such other time as the Secretary may by regulations prescribe." *Id.* at 165 n. 13 (citing Retirement Protection Act of 1994, Pub.L. No. 103–465, § 767(a), 108 Stat. 4809, 5038). The Plans argue that this amendment is sufficient to trigger application of § 1658(a) and its four-year statute of limitations period.

 However, the plaintiffs' § 203(e) and § 205(g) claims do not "arise under" the RPA simply because the RPA amended those statutes in some manner. The amendments did not "create a new right" for the plaintiffs that did not previously exist. The plaintiffs allege that the Plans failed to properly project their interest credits forward to age 65, which resulted in payments of less than the present value of their accrued benefits. They do not allege that the Plans failed to apply the discount rate required by the RPA. Amending the definition of "applicable interest rate" did not cause the plaintiffs' "lump sum" claims to spring into existence. Therefore, the claims did not "arise under" the post–1990 amendment and the

statute of limitations provided by § 1658(a) does not apply.

▉ Instead, the court will apply a six-year statute of limitations. A court must borrow the most analogous state statute of limitations when, as here, Congress did not provide a statute of limitations for the federal claim and § 1658(a) does not apply. *Berger v. AXA Network, LLC,* 459 F.3d 804, 808 (7th Cir.2006). As the Seventh Circuit has concluded, the most analogous state statute of limitations is Wisconsin's six-year period for bringing contract claims under Wisconsin statute § 893.43. *See Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 873 (7th Cir.1997). Therefore, the court finds that a six-year statute of limitations applies to the plaintiffs' "lump sum" claims.

### B. Date the "Lump Sum" Claims Accrued

The court must next determine when the six-year statute of limitations period began to run. Not surprisingly, the parties disagree about the date on which the plaintiffs' claims accrued. The Plans argue that the claims accrued in 1998 or 1999, when plan participants received Summary Plan Descriptions (SPD) and benefit guides stating that a lump sum distribution made before age 65 would be based on the amount in the participant's cash balance notional account at the time of payment. The Plans conclude that this statement notifies participants that their lump sum payments do not include projected future interest credits. The plaintiffs dispute that their claims accrued upon receiving SPDs and benefit guides in 1998, and deny that they received notice of an *injury* simply because the SPDs provided notice that lump sum payments would be equal to a participant's notional account balance. The fate of the plaintiffs' entire action hangs on this issue. The plaintiffs filed their claims against the SCJ Plan in November 2007, and against the JDI Plan in March 2008. Therefore, the claims are time-barred under the applicable six-year statute of limitations if they accrued in 1998 or 1999.

▉ In determining when a claim accrued, the court first identifies the alleged unlawful conduct underlying the claim and determines when the allegedly unlawful act occurred. *Berger,* 459 F.3d at 815. Next, the court determines when the plaintiffs discovered "an injury resulting from this unlawful act." *Id.* (quoting *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1139 (7th Cir.1992)). The parties disagree about what act constitutes the alleged unlawful conduct and when it occurred. The Plans imply that the alleged unlawful conduct is the 1998 adoption of plan terms that allow the Plans to project a participant's interest credits forward and discount them back to the present at the same rate. The plaintiffs, on the other hand, identify the alleged unlawful conduct as the Plans' failure to properly calculate the actuarial equivalent of their accrued benefits at normal retirement age and the underpayment of benefits that resulted. The issue for resolution by the court is whether the illegal conduct occurred when the Plans adopted an improper method of calculating lump sum benefits, or when they applied the method and calculated inadequate payment amounts.

▉ The court finds that the unlawful conduct here is the Plans' calculation and payment of lump sum benefits in an amount less than the present value of the participants' accrued benefits at age 65, which generated an alleged forfeiture of benefits to the plaintiffs. A forfeiture of benefits pursuant to an improper calculation cannot occur until the "lump sum" amount is determined and dispersed to the participant. Therefore, the challenged ac-

tions are not the type an employer can undertake before a participant has elected and received his lump sum distribution. The plaintiffs do not contest the legality of the plan's terms in the abstract, but rather, they challenge the Plans' specific actions in calculating and distributing inadequate lump sum amounts to the individual plaintiffs.[6] Thus, the unlawful conduct occurred at the time of these actions and not at the time the Plans converted to cash balance plans.

 The court must next determine when the plaintiffs discovered their injury. A plaintiff discovers her injury and her claim accrues when the pension plan communicates to her a "clear and unequivocal repudiation of rights." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir.1996). The court finds that each plaintiff's claim accrued at the time he or she received a lump sum distribution. Upon receipt of this distribution, individual plaintiffs were on notice that their lump sum payment did not include a projection of interest credits that exceeded the discount rate of those credits to present value because the plaintiffs received lump sum distributions equal to the amount of their notional account balance, and no more.

 The plaintiffs argue that they did not "know" they had been injured at the time they received their lump sum distributions because they did not know what projection rate the Plans applied to Annual Earnings Credits, or that the Plans failed to apply a proper calculation. The plaintiffs suggest that their claims did not accrue until they were informed that the Plans' method of calculating lump sum benefits violated ERISA. However, a plaintiff's claim accrues when he learns of his injury and not when he learns that the injury is actionable. *Central States, Southeast & Southwest Areas Pension Fund v. Navco*, 3 F.3d 167, 171 (7th Cir. 1993). According to the plaintiffs' reasoning, a pension participant could bring his claim 25 years after receiving a lump sum distribution, if he remained ignorant that the Plan employed an incorrect method of calculation. However, the plaintiffs' argument contradicts the "policy of repose" favored by the law, which underlies all statutes of limitations. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007).

---

**6.** The Plans cite *Bilello v. JPMorgan Chase Retirement Plan*, 607 F.Supp.2d 586 (S.D.N.Y. 2009), to support their argument that the plaintiffs' claims accrued in 1998. In that case, the district court concluded that the plaintiffs' ERISA claims, which included a "lump sum" claim, challenged the legality of the pension plans themselves instead of challenging the application of the plans. *Bilello*, 607 F.Supp.2d at 593. As a result, the court granted the defendant's motion to dismiss the plaintiffs' claim that the pension plan failed to require a projection of future interest credits to normal retirement age and to use the projection in its calculation, creating a forfeiture of benefits. *Id.* at 596. The court held that the claim was time-barred because the plaintiffs received notice that the plan would not employ a "whipsaw" calculation more than six years previously, when they received SPD's omitting any reference to a projection of future interest credits in calculating benefits. *Id.*

However, this court disagrees that a "lump sum" claim accrues at the time a plan converts to a cash balance pension plan and adopts related plan amendments, rather than at the time the plan applies an inadequate calculation and distributes the insufficient lump sum payment. A forfeiture of benefits based on the SCJ and JDI Plans' failure to properly project future interest credits to age 65 and then discount to the present could not occur before a given plaintiff had even elected to take his benefits as a lump sum distribution. Prior to receiving such a distribution, the plaintiffs had not yet forfeited any benefits to which they were entitled.

The Plans allegedly injured the plaintiffs by miscalculating and underpaying lump sum benefits. The payments themselves constitute an unequivocal repudiation of the plaintiffs' entitlement to further benefits pursuant to a projection of future interest credits forward to age 65. Thus, an individual plaintiff's claims accrued upon receipt of his lump sum payment from the SCJ or JDI Plan. The claim of any SCJ Plan participant receiving a lump sum distribution more than six years before the filing of this action, or JDI Plan participant receiving a distribution more than six years before the filing of the consolidated action, is time-barred. Consequently, the lump sum claims of the SCJ Lump Sum Subclass B and JDI Lump Sum Subclass B members are untimely under the statute of limitations.

### III. Lump Sum Claims

■ The court now turns to the merits of the "lump sum" claims. The plaintiffs allege that they received lump sum payments at less than the present value of their accrued benefits because the Plans failed to include the value of future interest credits to age 65. The Plans admit that they did not properly calculate the lump sum distributions because they failed to project the participants' account balance forward to age 65 at the annual interest crediting rate. In short, the Plans admit liability on the "lump sum" claim and acknowledge that the lump sum distributions must be recalculated. The only remaining matter is determining the appropriate interest projection rate to apply to partici-

pant accounts in recalculating the correct lump sum payments.[7]

Neither the case law nor IRS regulations spell out precisely what interest crediting rate must be applied to the plan participants' notional account balances in this case. The Seventh Circuit states that when, as here, the future interest credits are not fixed, determining present lump-sum equivalent value is merely "estimation." *Berger,* 338 F.3d at 760. The district court in *Berger* determined that the proper method for projecting a plan participant's notional account balance to age 65 was to apply the interest crediting rate in effect on the date of each plaintiff's lump sum distribution. *Berger v. Xerox Ret. Income Guar. Plan,* 231 F.Supp.2d 804, 818 (S.D.Ill.2002). In *Lyons v. Georgia–Pacific Corp. Salaried Employees Retirement Plan,* a class action also alleging ERISA violations based on improper calculations of "lump sum" distributions, the United States District Court for the Northern District of Georgia similarly required the defendant plan to project the plaintiffs' cash balance accounts forward using the interest crediting rate in effect as of the date of the lump sum distributions. 196 F.Supp.2d 1260, 1265–67 (N.D.Ga.2002). Though the Seventh Circuit was not directly presented with the question, the court commented in *Berger* that using the current year's interest crediting rate at the time of the participant's lump sum distribution was an appropriate method for projecting future interest credits.[8] *Berger,* 338 F.3d at 760.

**7.** The parties only dispute the interest crediting rate to be used in projecting participant accounts forward to age 65, the first step in the two-part "whipsaw" calculation. They do not dispute the applicable rate for discounting the interest credits back to present value, the second step in the calculation. (*See* Pls.' Mot.

Summ. J., at 15 n. 8; Defs.' Mot. Summ. J., at 25 n. 11).

**8.** The court notes that the Seventh Circuit's statements in *Berger* regarding the application of a particular interest crediting rate constitute dicta. *See Berger,* 338 F.3d at 760. ("[Defendant plan], while denying that future interest credits should figure in the plaintiffs'

These statements provide the only authoritative guidance before the court regarding the appropriate interest crediting rate for the Plans to use in projecting the plaintiffs' notional account balances forward to age 65. The plaintiffs argue that the IRS "takes the position" that the best representation of future value of interest crediting rates is the actual current year or prior year's interest rate. They do not cite to any regulations or revenue rulings to support this contention, but rather, the plaintiffs cite to correspondence between IRS agents and counsel for a different pension plan, obtained through discovery in a separate case pending in the Western District of Wisconsin, *Ruppert v. Alliant Energy Plan,* 572 F.Supp.2d 1063 (W.D.Wis.2008). These communications are neither appropriately before this court, nor are they statements of official agency policy. *See Sidell v. Commissioner of Internal Revenue,* 225 F.3d 103, 111 (1st Cir.2000) (formal IRS statements of policy are regulations and revenue rulings and statements by individual IRS employees do not bind the agency).

The court agrees that using the interest crediting rate in effect at the time of a plaintiff's lump sum distribution is one appropriate method of projecting a notional account balance forward to age 65 when conducting a "whipsaw" calculation. However, neither party proposes this precise calculation strategy. Instead, the parties each propose their own interest crediting rates. These proposed interest crediting rates differ greatly from one another, though each side insists that its proposal is the most "fair" and "unbiased." The plain-

tiffs propose that an interest crediting rate of 8.95% be applied to recalculate the distributions of all "lump sum" plaintiffs, regardless of the date on which an individual plaintiff received his distribution. They arrive at this interest crediting rate based on a stochastic modeling[9] simulation. In contrast, the Plans propose a projected interest rate of 1.52%. They base this interest rate on a constant "spread," equal to the average historical difference between the interest crediting rate and the required discount rate for the years 1986 to 1997, a twelve-year period predating the conversion to a cash balance plan.

Each side asks the court to endorse its proposed interest crediting rate in order to ensure the lump sum payments made to the plaintiffs are the actuarial equivalent of an age–65 pension. However, the court will not weigh the two proposed interest rates against one another or pull its own interest crediting rate from thin air. Instead, the court will issue an injunction to the Plans and order that they recalculate the lump sum distributions pursuant to the requirements of the law. This method of relief was recently suggested by the Sixth Circuit Court of Appeals. *See Durand v. Hanover Insurance Group, Inc.,* 560 F.3d 436, 442 (6th Cir.2009) (stating that "adjudication of [the plaintiff's lump sum claim] need not put the district court on a path that ends with the court itself trying to estimate what her future interest credits would have been. Rather, if the district court determines that the Plan's methodology violates ERISA, the court could simply award injunctive relief that requires [the plan], in the first instance, to do what

---

lump-sum entitlements at all, does not make an issue of the method of figuring those credits into the lump sum if they have to be figured in.").

**9.** The plaintiffs explain stochastic modeling simulation as a financial modeling technique

that projects the future path of economic variables, such as interest rates and equity market returns using random variables, but provide no citation for the proffered definition. (Pls.' Proposed Findings of Fact, ¶ 28).

the law requires."). Therefore, the court will grant summary judgment to the plaintiffs on their "lump sum" claim, but will deny summary judgment to both parties as to their proposed methods of calculating damages. Rather, the court will require that the Plans apply an appropriate interest crediting rate and re-determine the actuarial equivalent of the SCJ Lump Sum Subclass A and JDI Lump Sum Subclass A lump sum distributions and submit the results to plaintiffs' counsel within a period not to exceed 90 days. In the event that the parties are unable to reach an agreement as to a fair, just, and reasonable interest crediting rate, they remain free to resubmit the issue to the court for determination through supplemental filings consisting of proposed findings of fact and conclusions of law, together with a memorandum of law, all of which must be simultaneously filed by plaintiffs and defendants not later than July 11, 2010. No further extensions of the deadline will be granted. The court will enter a final order on damages and prejudgment interest after resolution of this issue.

## IV. Motions to Strike

■ As a final matter, the Plans filed three motions to strike declarations and exhibits filed by the plaintiffs in support of their motion for summary judgment and their brief in opposition to the cross-motion for summary judgment. The Plans argue that these documents do not comply with summary judgment evidentiary requirements because the challenged statements are not based on personal knowl-

edge, because the challenged exhibits are hearsay or lack foundation, and because the documents were not properly disclosed. Therefore, the Plans conclude, the court cannot rely upon the challenged documents in deciding a motion for summary judgment.

These declarations and exhibits relate to the issue of an appropriate interest crediting rate to apply when recalculating the plaintiffs' lump sum distributions to achieve actuarial equivalence of their notional account balances at age 65. The plaintiffs filed the challenged documents in support of their argument that the court should order the Plans to apply a particular interest crediting rate. However, the court did not rely upon any of the exhibits or declarations because it did not order the Plans to apply the crediting rate proposed by either party.[10] Therefore, the court will deny the motions to strike as moot as moot.

## CONCLUSION

The "backloading" claims asserted by the plaintiffs fail because the plaintiffs asserted in their pleading that the Annual Earnings Credit is a frontloaded credit and because the Annual Earnings Credit does not violate the "133 1/3 Percent Rule." The plaintiffs prevail, however, on the "lump sum" claims for plaintiffs who received their distributions less than six years prior to the filing of the suit against their respective pension plan. The Plans admit liability on these claims and concede that the lump sum distributions paid to the Lump Sum Subclass A plaintiffs[11] must be

---

**10.** The court also notes that the Local Rules for the Eastern District of Wisconsin explicitly state that collateral motions in the summary judgment process, such as the Plans' motions to strike, "are disfavored." Civil L.R. 56(b)(9).

**11.** The plaintiffs recently filed a motion asking the court to direct that notice regarding this case be sent to all individuals in the two certified classes and four certified subclasses. However, the court certified the classes under Federal Rule of Civil Procedure 23(b)(2). Therefore, notification is not required and the court will not order it. *See* Fed.R.Civ.P.

recalculated. The court declines to grant summary judgment to either party as to their proposed interest crediting rates for determining the actuarial equivalence of the plaintiffs' accounts at age 65. Instead, the court directs the Plans to recalculate the lump sum distributions in accordance with the requirements of the law.

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for summary judgment (Docket # 125) be and the same is hereby **GRANTED in part and DENIED in part.** The court grants summary judgment to the SCJ Lump Sum Subclass A and JDI Lump Sum Subclass A plaintiffs on their "lump sum" claims that the Plans violated ERISA § 203(e) and § 205(g) by failing to properly calculate lump sum distributions and paying lump sums of less than the present value of their accrued benefits, and violated § 203(a) based on the resulting forfeiture of benefits. However, the court denies summary judgment as to the plaintiffs' proposed interest crediting rate for calculating under payments and denies summary judgment as to the "backloading" claims for violations of ERISA § 204(b)(1).

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 126) be and the same is hereby **GRANTED in part and DENIED in part.** The court grants the motion for summary judgment as to the "backloading" claims of the SCJ Class and JDI Class. The court also grants summary judgment to the Plans as to the "lump sum" claims of the SCJ Lump Sum Subclass B and JDI Lump Sum Subclass B plaintiffs because their claims are time-barred under the applicable six-year statute of limitations. However, the court denies summary judg-

ment as to the Plans' proposed interest crediting rate.

**IT IS FURTHER ORDERED** that the defendants' motion to exceed page limits (Docket # 137) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the plaintiffs' motions for leave to file excess pages (Docket # 155) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the defendants' motions to strike (Docket # 157, 159, and 178) be and the same are hereby **DENIED;**

**IT IS FURTHER ORDERED** that the defendants' motion for leave to file excess pages (Docket # 172) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an extension of time for filing a reply brief (Docket # 182) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the defendants' motion to strike the plaintiffs' reply brief (Docket # 186) be and the same is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an order directing notice to the classes regarding the case (Docket # 201) be and the same is hereby **DENIED.**

### ORDER

On March 26, 2010, this court issued an order addressing cross-motions for summary judgment filed by the parties. The class plaintiffs and the defendant retirement plans ("the Plans") both moved for summary judgment on claims that the Plans impermissibly backloaded pension

23(c)(2)(A); *In re Allstate Insurance Company,* 400 F.3d 505, 506 (7th Cir.2005) ("A Rule 23(b)(2) class action does not require giving class members notice of the suit and a chance to opt out of it and bring their own, individual suits").

benefits ("backloading claims") and on claims that the Plans incorrectly calculated lump sum distributions of pension benefits paid to pre-retirement age plan participants ("lump sum claims"). The lump sum claims asserted that the payments made to participants who chose to receive their benefits as a one-time distribution prior to age 65 were incorrectly calculated because the Plans failed to properly project future interest credit earnings to age 65 and then discount them back to the present (a so-called "whipsaw" calculation). The parties also disagreed about the correct interest crediting rate to apply in calculating the value of under-payments made to the plaintiffs as a result of the Plans' failure to apply a proper whipsaw calculation.

The motions for summary judgment covered substantial ground and addressed a considerable number of issues. Two of these issues included the applicable statute of limitations and the accrual date of the lump sum claims. The court resolved the matters by determining that a six-year statute of limitations applied to the claims and that the claims accrued at the time that the lump sum distributions were made to the class members. Because the members of the SCJ Lump Sum Subclass B and the JDI Lump Sum Subclass B received their lump sum distributions more than six years prior to the filing of the relevant lawsuit, the court dismissed their claims as time-barred.

The plaintiffs now move for reconsideration of the court's determination that the lump sum claims accrued on the date the plaintiffs received their lump sum distributions. Though they do not specify a particular Federal Rule of Civil Procedure, the plaintiffs presumably bring their motion pursuant to Rule 59(e) because they cite to a previous decision by this court resolving a Rule 59(e) motion, and because they allege that the court committed a

"manifest error of law." *See Obriecht v. Raemisch,* 517 F.3d 489, 493–94 (7th Cir. 2008) (stating that a motion for reconsideration based on errors of law is encompassed by Rule 59(e)). Rule 59(e) allows a party to move the court to alter or amend judgment. Fed.R.Civ.P. 59(e). Alteration or amendment of a judgment under Rule 59(e) is only appropriate if the moving party can demonstrate a manifest error of law or present newly-discovered evidence. *Id.* at 494 (citing *Sigsworth v. City of Aurora,* 487 F.3d 506, 511–12 (7th Cir. 2007)). A manifest error of law occurs when a court disregards or misapplies controlling precedent. *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000).

The plaintiffs do not dispute that a six-year statute of limitations applies, nor do they dispute that the claims of the Lump Sum Subclass B class members would be time-barred if the members had known that the lump sum distributions were made from "notional" accounts or had known that the Plans applied a whipsaw calculation to determine the amount of the distributions. However, the plaintiffs argue that the undisputed facts do not establish that they had this knowledge and, therefore, they did not "discover" injury until sometime after receiving lump sum payments. The plaintiffs point to the fact that the summary plan descriptions (SPD's) distributed to plan participants did not inform them that their accounts were merely "notional" or that future interest would be projected forward and then discounted back to the present in calculating lump sum distributions. On this basis, the plaintiffs conclude that they did not have the requisite knowledge of injury to start the running of the statute of limitations and that the court made a manifest error of law because it misapprehended the amount of information the plaintiffs pos-

sessed about the manner in which their lump sum distributions were calculated at the time they received the distributions. The court disagrees that it made a manifest error of law and will deny the motion for reconsideration.

As the court noted in its original order, a plaintiff discovers her injury and her claim accrues when the pension plan communicates to her a "clear and unequivocal repudiation of rights." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir.1996). The court determined that the receipt of lump sum distributions by the plaintiffs was a clear and unequivocal repudiation of any right to additional pension benefits. At that time, the plaintiffs were aware that their lump sum distributions equaled the value of their account balance, and no more. The court thus concluded that the claims of the plaintiffs accrued on the date that each individual plaintiff received his or her lump sum payment. This determination is consistent with decisions made by several other courts finding that claims accrue at the time the plaintiff receives a lump sum distribution. *Flagg v. Skadden, Arps, Slate, Meagher & Flom Pension Plan*, No. 07 Civ. 7392, 2008 WL 2471717, at *2–3, 2008 Dist. LEXIS 47613, at *9–12 (S.D.N.Y. June 18, 2008) (finding that the plaintiff's whipsaw claim accrued at the time of her lump sum distribution, despite the fact that she received the distribution prior to issuance of *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir.2000), the first Court of Appeals decision to address whipsaw claims); *Cooley v. Southern Graphic Systems Inc. Pension Plan*, No. 3:06CV–1–H, 2008 WL 927875, at *1, 2008 U.S. Dist. LEXIS 22730, at *3–4 (W.D.Ky. Apr. 4, 2008) (finding that the plaintiff's whipsaw claim accrued at the time she received her lump sum payment); *Fallin v. Commonwealth Industries, Inc. Cash Balance Plan*, 521 F.Supp.2d 592, 597 (W.D.Ky.2007) (finding that the plaintiffs' claims for pension benefits owed accrued "no later than when they received their lump-sum distributions.").

However, the plaintiffs here argue that the "discovery rule" applies and prevents the statute of limitations from being triggered on the date of the lump sum distributions. The plaintiffs assert that they could not *know* they had been *injured* at the time they received lump sum payments because the Plans "concealed" information regarding the nature of the participants' notional accounts and the application of a whipsaw calculation to their account balances. The plaintiffs base this assertion on the absence of any reference to a "notional" account or to a whipsaw calculation in the SPD's and newsletters they received from the Plans.

The SPD's and newsletters distributed to plaintiffs did not explain the concept of a notional account or inform participants that the Plans would apply a whipsaw calculation in determining lump sum distributions. Instead, the SPD's and newsletters simply stated that the account statements received by individual participants each year showed the "value of your current pension benefit account" and depicted the "exact value of your retirement," and sometimes likened the account balance to a "savings account." (Defendants' Proposed Findings Of Fact (DFOF) ¶¶ 50, 52; Plaintiff's Proposed Findings of Fact (PFOF) ¶ 84). The SPD's also noted that any participant who chose to take his benefits as a lump sum distribution would receive the "entire value" of his account in "one payment," and that "no further pension benefit will be payable from the company." (DFOF ¶ 50, PFOF ¶ 86). The plaintiffs argue that the court "misunderstood" these facts in the court's original order and lead to the court's "manifest error of law" in finding that the plaintiffs' claims ac-

crued at the time they received their lump sum distributions. However, the facts noted above do not render the court's conclusion that the lump sum claims accrued at the time the plaintiffs received lump sum distributions a manifest error of law.

First, the plaintiffs fail to cite any controlling precedent in their motion to reconsider that the court misapplied or disregarded. Instead, the plaintiffs merely cite to a recent decision issued by the United States District Court for the Western District of Wisconsin in a nearly-identical case, *Ruppert v. Alliant Energy Cash Balance Pension Plan,* 716 F.Supp.2d 801, No. 08–cv–127–bbc, 2010 WL 2264954 (W.D.Wis. June 3, 2010). In *Ruppert,* Judge Barbara Crabb concluded that the claims of the class plaintiffs did not accrue at the time they received lump sum distributions because the plaintiffs could not be held to know about their injury. *Id.* at 821, *19. In finding that the plaintiffs did not have the requisite knowledge of injury at the time of the lump sum distributions, Judge Crabb emphasized the actions of the defendant plan in providing misleading information to the plaintiffs about the nature of their accounts and the calculation of their lump sum payments. *Id.* at 822, *20 ("... the problem is not simply that participants remained ignorant for many years, it is that the defendant *kept* them ignorant by suggesting their account balance was something it was not and keeping their whipsaw calculation entirely invisible."). A subsequent decision issued by our sister court is indeed entitled to due consideration. Nevertheless, the fact that this branch of the court came to a different conclusion is not sufficient to establish a manifest error of law requiring amendment of the court's judgment.

Second, the information giving rise to the plaintiffs' claims was readily available to the plaintiffs through reasonable diligence, despite the fact that the SPD's distributed to plan participants did not explain that their accounts were hypothetical calculation tools or that a zero sum whipsaw calculation would be applied to their accounts to determine lump sum payments. The plan documents included all the requisite information underlying the current lump sum claims, which the plaintiffs themselves acknowledge. The plan documents state that a pre-normal retirement age distribution shall equal the actuarial equivalent of the terminating employee's pension at normal retirement age. (DFOF ¶ 32). The plan documents also state that the Plans project future interest using a 30–year Treasury return rate; the same rate used to discount the future interest credit back to present value. (DFOF ¶ 33). Thus, the plan documents reveal that pre-retirement benefits taken in a lump sum include projected future interest credits discounted to the present and disclose the particular whipsaw calculation the Plans employed in determining lump sum payments.

The plaintiffs do not dispute that the plan documents contain the relevant information, but the plaintiffs argue they cannot be held to know this information because the plan documents were never distributed to them. However, under ERISA, a pension plan is not required to provide plan documents to all participants unless a request is made. 29 U.S.C. § 1024(b)(2), (b)(4); 29 U.S.C. § 1132(c). Further, despite the plaintiffs' claim that the Plans "concealed" information regarding their accounts and the whipsaw calculation, there is no evidence that the Plans denied any requesting plaintiff access to the plan documents. In *Ruppert,* Judge Crabb compared the defendant pension plan's omission of details about the nature of participant account balances and whipsaw calculations from participant communications to the "hiding" of facts giving

rise to the plaintiffs' claims in *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336 (D.C.Cir.1991), where the defendant falsified contribution reports and failed to disclose information not otherwise obtainable through reasonable diligence. 716 F.Supp.2d at 821–22, No. 08–cv–127–bbc, 2010 WL 2264954, at *20. However, this court does not believe that the distribution of SPD's including simplified (even arguably over-simplified) in this case is equivalent to the purposeful falsification of documents. Information about the nature of participant accounts or whipsaw calculations was available in the plan documents and could be obtained by simply requesting the documents. Therefore, this court disagrees that the plaintiffs' injury could not have been discovered through "reasonable diligence."

The plaintiffs argue that they cannot be expected to request plan documents or to know the information contained therein but, rather, they should only be held responsible for knowing information directly communicated in the SPD's—information that did not advise participants that their accounts were simply calculation tools or that a whipsaw calculation would be applied to project future interest credits forward to age 65. The plaintiffs cite to *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985), in support of the proposition that they may rely upon the SPD's alone. However, *McKnight* does not outline the particular information that an SPD must provide, nor does the case involve allegations that the defendant pension plan was "concealing" relevant information. Instead, the *McKnight* case states that when a plan document and plan summary conflict, a participant may reasonably rely on the plan summary to determine his pension rights. *Id.* at 1571; *Helfrich v. Carle Clinic Ass'n, P.C.*, 328 F.3d 915, 916 (7th Cir.2003). Omission of details about the

method of calculating benefits is not the same as a direct conflict between a plan summary and official plan documents. The SPD's and the plan documents in the instant case do not directly conflict. The SPD's informed participants that they could receive the "entire value" of their accounts in one payment and that the value was reflected in their account balance. (DFOF ¶¶ 50, 52, 54). Given that the Plans projected future interest credits forward to age 65 at the same rate at which they were discounted to the present, the whipsaw calculation resulted in no additional benefits and the account balance did represent the entire value of each participant's benefits (when calculated under the illegal whipsaw calculation used by the Plans). The case does not state that "reasonable diligence" in discovering an injury excludes a request for plan documents or that omission of technical plan terms or actuarial assumptions from the SPD constitutes "hiding" which impacts the running of the statute of limitations.

Additionally, the plaintiffs argue that, even if they had received plan documents, they could not "discover" injury simply by reading the documents because plan documents are impenetrable to the average plan participant. The plaintiffs do not point to any authority stating that claims do not accrue until a plaintiff understands the import of reasonably attainable information giving notice of his injury. Further, this argument suggests that any plaintiff whose claim involves complicated and technical information may sidestep the statute of limitations until he understands that information.

The court reasserts its earlier determination that the lump sum claims of the plaintiffs accrued at the time they received lump sum payments. The payment of a lump sum distribution constituted a clear repudiation of entitlement to any addition-

al benefits and there is no evidence showing that the Plans purposefully concealed details about the calculation of lump sum distributions from participants. To the contrary, all information giving rise to the plaintiffs' claims was available within the plan documents and could be obtained with reasonable diligence. A determination that the lump sum claims did not accrue until some unspecified time when participants were directly informed that a particular whipsaw calculation was applied to their lump sum payments, rather than at the time they received lump sum payments, would theoretically allow these claims to be brought decades after participants received their distributions. Such a determination undermines the policy of repose underlying statutes of limitations. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007). Further, such a finding suggests that the statute of limitations on pension calculation claims only begins to run if all value rules and actuarial assumptions that apply to each form of pension are included in the SPD itself. If this is true, plans will draft excessively detailed SPD's and the documents will lose their value as basic summaries of benefits which are comprehensible to average employees.

Accordingly,

**IT IS ORDERED** that the motion for reconsideration (Docket # 204) be and the same is hereby **DENIED**.